IN THE DISTRICT COURT OF SEDGWICK COUNTY, KANSAS

L. D. LELAND, CLERK

.......... DEPUTY

NO. A___    A 33420    DIV.

VELMA L. HAMILTON                                          PLAINTIFF

VS

MILO G. HAMILTON                                          DEFENDANT

## PETITION FOR DIVORCE

Comes now the plaintiff and for cause of action against the defendant, alleges says

That she is a resident of and her correct post office address is Wichita, Sedgwick County, Kansas; that she is now and has been for more than one year last past, next preceding the filing of this petition, and actual resident in good gaith of the State of Kansas;

That she and the defendant were married on the 17th day of December, 19 45, at Bartlesville, Oklahoma, and are still husband and wife.

That there has been no fault on her part, but that the defendant has been guilty of gross neglect of duty and extreme cruelty. PLAINTIFF further states that their has been one child born of this marriage, namely; Gary, two years of age. Plaintiff further states that they own a laundry which is to be sold, all outstanding bills paid and the money divided between plaintiff and defendant. Plaintiff further states that they own their furniture and one 1941 Chevrolet automobile.

WHEREFORE, plaintiff prays that she be granted an absolute decree of divorce from the said defendant; that she be given the absolute care, custody and control of the said minor child; that she be given the furniture as her sole and separate property; that the money be divided from the sale of the laundry after all outstanding bills are paid; that she be given child support in the sum of $10.00 per week, her attorney fees and court costs.

SULLIVAN AND ANGLE

By J. A. Sullivan
Attorneys for Plaintiff

STATE OF KANSAS, COUNTY OF SEDGWICK, ss

VELMA L. HAMILTON , of lawful age, being first duly sworn, says that she is the plaintiff in the above entitled action and that the statements and allegations contained in the foregoing petition are correct and true.

Mrs. Velma L. Hamilton
Plaintiff

000217

L. D. LELAND, CLERK
DEPUTY

SULLIVAN AND ANGLE

ATTORNEYS AT LAW

410 Orpheum Bldg. - Wichita, Kansas

IN THE DISTRICT COURT OF SEDGWICK COUNTY KANSAS

| | | |
|---|---|---|
| VELMA L. HAMILTON | PLAINTIFF ) | |
| | ) | |
| VS. | ) | CASE NO. A  A 33420 |
| | ) | DIV. |
| MILO G. HAMILTON | DEFENDANT ) | |

WAIVER OF SUMMONS

I,   MILO G. HAMILTON                , hereby enter my appearance herein and waive the issuance and service of summons in the above entitled action and consent that the same be set down for trial and heard at any time convenient to the court without further notice to me.

*Milo G Hamilton*
Defendant

STATE OF_____KANSAS_____, COUNTY OF_SEDGWICK____, ss.

BE IT REMEMBERED, That on this 26th day of____July____, 1950, before me the undersigned a Notary Public, in and for the County and State aforesaid, come, *Milo G. Hamilton*   , who is personally known to me to be the same person who executed the within instrument of writing and that such person duly acknowledged the execution of the same.

**000218**

OCT 9  11 06 AM 1950

L. D. LELAND, CLERK
DEPUTY

IN THE DISTRICT COURT OF SEDGWICK COUNTY, KANSAS

| | | |
|---|---|---|
| VELMA L. HAMILTON, | PLAINTIFF | ) |
| | | ) |
| VS | | ) CASE NO.  A 33420 |
| | | ) |
| | | ) DIV. 4 |
| | | ) |
| MILO G. HAMILTON, | DEFENDANT | ) |

PAGE
CASE CLOSED

## D E C R E E

Now, on this 27th day of September, 1950, the same being one of the regular April 1950 term days of the above entitled court, the above entitled action comes on for hearing, the plaintiff appearing in person and by her attorney, T. A. Sullivan of the firm of Sullivan and Angle, and the defendant appearing not, the court finds that defendant is in default for want of an answer or any other pleading, that he has duly entered his appearance herein by waiver which is in due form as is provided by the rules of this court and is approved by this court; that the court finds it has jurisdiction of the parties and the subject matter; that the above entitled action has been on file more than 60 days as required by law; that the statements and allegations contained in plaintiff's petition are true; that she is entitled to an absolute decree of divorce from the defendant.

The court further finds that the plaintiff shall have the care, custody, and control of the minor child, Gary, but that the defendant shall have the right and privilege of visitation with said minor child at any and all reasonable times without inconvenience to the plaintiff; that the said defendant shall pay the sum of $10.00 per week for the support of said minor child until the further order of the court; that said minor child shall not be removed from the jurisdiction of this court by either the plaintiff or defendant without first obtaining the approval of this court.

That the plaintiff shall have as her sole and personal property all of the household goods and furniture of this plaintiff and defendant and have judgment against defendant for her attorney fees in the sum of $100.00 and court costs in this action, in the sum of $15.00.

IT IS, THEREFORE, BY THE COURT CONSIDERED, ORDERED, ADJUDGED AND DECREED that the plaintiff be, and she is hereby granted an absolute decree of divorce from the said defendant.

IT IS FURTHER ORDERED BY THE COURT that the plaintiff shall have the care, custody and control of the said minor child: Gary , and the defendant shall have the right of reasonable visitation with said minor child; that the defendant shall pay the sum of $10.00 each week for the support of this minor child until the further order of the court; that said plaintiff shall have the furniture and household goods as her sole and separate property;  that all payments made for child support are to be paid to the Clerk of the District Court, Sedgwick County, Kansas, to be paid in cash or by money order only.

IT IS FURTHER ORDERED BY THE COURT that the plaintiff have judgment against you for the sum of $100.00  for attorney fees and the sum of $15.00 for costs of this action, and the defendant is ordered to pay all outstanding bills

000219

Ira Purkey, 728 Ida, Wichita, Kansas

Mrs. Ira Purkey, 728 Ida, Wichita, Kansas.

Mrs. Carrie Burke, 238 North Clarence, Wichita, Kansas (*before*

*or at County Hospital*

WE COMMAND YOU to be and appear in your own proper person before the Judge of Division No.__, of the District Court of the County of Sedgwick, at the Court House in Wichita, County of Sedgwick, on the __30th__ day of __January__, 19__64__, at __3:00__ o'clock __P__. M., of that day, then and there to testify on behalf of the __Defendant__ in a certain controversy now pending and undetermined in said court, wherein __Velma L. Hamilton__ is plaintiff and __Milo G. Hamilton__ defendant, and this do you in nowise omit under the penalty of the law.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of said Court at my office in Wichita, this __28__ day of __January__, A. D. 19__64__.

(SEAL)

JOANN DUNN, Clerk

Grey Dresie_____Atty. for __Defendant__

Joann Dunn
Deputy Clerk.

## SHERIFF'S RETURN

Received this writ __January 29__, 19__64__ Served the same by delivering a certified copy to each person named personally, at the times following, to-wit:

| | | | |
|---|---|---|---|
| Ira Purkey | 1-29 1964 | | 19____ |
| Mrs Ir | 19___ | | 19____ |
| Mrs Carrie Burke | 1-29 1964 | | 19____ |
| | 19___ | | 19____ |

Served the same by leaving a copy thereof at the usual place of residence, at the times following, to-wit:

| | | | |
|---|---|---|---|
| Mrs. Ira Purkey | 1-29 1964 | | 19____ |
| | 19___ | | 19____ |
| | 19___ | | 19____ |

The following persons not found in Sedgwick County:

| | | | |
|---|---|---|---|
| | 19___ | | 19____ |
| | 19___ | | 19____ |

Serving first person $ 1.50

000220

IN THE DISTRICT COURT OF SEDGWICK COUNTY, KANSAS

VELMA L. HAMILTON,                    Plaintiff  )
                                                 )
                vs                               )
                                                 )        No. A-33420
                                                 )
                                                 )
MILO G. HAMILTON,                    Defendant.  )

### APPLICATION FOR CHANGE OF CUSTODY

COMES NOW Milo G. Hamilton, defendant in the above-entitled cause, and asks the court to modify the order made on the 27th day of September, 1950, by changing the custody of the minor child Gary from the plaintiff to the defendant and by issuing an order allowing the defendant to take the said minor child to North Little Rock, Arkansas, for residence and schooling, and in support of this application defendant states and says:

1.  That the said minor child is now fifteen years of age; that he has expressed a desire to reside with the defendant; that it is at the said minor's request and instance that the defendant presents this application; that at the present time the said minor child is not passing in school and that the defendant feels that he could provide the proper environment and atmosphere for the rearing and schooling of the said minor child.

2.  It is further requested that this application be specially set for oral argument in order that the said Gary not miss more school than is necessary at this time.

WHEREFORE, said defendant prays that the court modify the said order of September 27, 1950, by granting the custod-

000221

of said minor child to this defendant and authorizing this defendant to remove said child to North Little Rock, Arkansas, and that the court specially set this application for oral argument.

DRESIE & JORGENSEN

By _____
Attorneys for Defendant

STATE OF ARKANSAS    )
                     ) SS
COUNTY OF PULASKI    )

MILO G. HAMILTON, of lawful age, being first duly sworn on oath states and says:

That he is defendant in the above-entitled action that he has read the above and foregoing APPLICATION FOR CHANGE OF CUSTODY and knows the contents thereof, and that the statements therein contained are true and correct.

_____
Milo G. Hamilton

Subscribed and sworn to before me this 20 day of January, 1964.

_____
Notary Public

My commission expires:

2-14-65

000222

DEPUTY

IN THE DISTRICT COURT OF SEDGWICK COUNTY, KANSAS

VELMA L. HAMILTON,               Plaintiff, )
                                            )
                                            )
                                            )
                vs                          )        No. A-33420
                                            )
                                            )
MILO G. HAMILTON,                Defendant. )


AFFIDAVIT OF MILO G. HAMILTON


STATE OF ARKANSAS     )
                      )  SS
COUNTY OF PULASKI     )


        MILO G. HAMILTON, of lawful age, being first duly sworn
on oath states and says:

        That he is the defendant in the above-entitled cause of
action; that he has caused to be filed therein an application
to modify the order of this court made on the 27th day of
September, 1950, by giving custody of Gary, the minor child of
the parties hereto, to the defendant, this affiant, and in sup-
port of such application your affiant states and says:

        1.  That he is now a resident of North Little Rock,
Arkansas; that he is employed as a credit manager for the
Davidson Furniture Company in that city; that he has remarried,
has a home with adequate room, as well as adequate financial
means to care for the said Gary; that there is available ap-
propriate schooling for the said minor child; that he has been
informed and does believe that the said minor child is at the
present time not passing in his school work and is in need of
parental guidance of a father, and that this affiant is ready,

000223

the proper environment and parental guidance the said minor child would be benefited considerably and would in all probability be restored to passing effort in his school work.

Further affiant saith not.

Milo G. Hamilton

Subscribed and sworn to before me this 20 day of January, 1964.

Notary Public

My commission expires:

2-14-65

000224

AMherst 7-4231

IN THE DISTRICT COURT OF SEDGWICK COUNTY, KANSAS

| | | |
|---|---|---|
| VELMA L. HAMILTON, | Plaintiff, | ) |
| | | ) |
| | | ) |
| vs | | ) |
| | | ) No. A-33420 |
| MILO G. HAMILTON, | Defendant. | ) |
| | | ) |
| | | ) |

ORDER FOR HEARING

NOW, on this _22d_ day of January, 1964, the defendant, by and through his attorney, Grey Dresie of the firm of Dresie & Jorgensen, files his application for change of child custody and asks that such matter be set down for hearing.

The court being advised in all the premises finds that such matter should be set for hearing before this court on the 24th day of January, 1964, at _930_ o'clock _A_. m. and that notice thereof should be given to the plaintiff by the attorney for the defendant by personally giving to said plaintiff a copy of said application, together with the supporting affidavit and this order setting the same for hearing.

IT IS THEREFORE BY THE COURT SO ORDERED.

_____
Judge

APPROVED:

DRESIE & JORGENSEN

000225

AMherst 7-4231

JOANN DUNN, CLK.
DEPUTY

IN THE DISTRICT COURT OF SEDGWICK COUNTY, KANSAS

| | | |
|---|---|---|
| VELMA L. HAMILTON, | Plaintiff, ) | |
| | ) | |
| | ) | |
| vs | ) | No. A-33420 |
| | ) | |
| | ) | |
| MILO G. HAMILTON, | Defendant. ) | |

## MEMORANDA IN CONFORMITY WITH RULE 114

In support of the application for change of custody, the attorney for the defendant cites 60-1610 of the New Code of Civil Procedure of the State of Kansas.

DRESIE & JORGENSEN

By _____

/Attorneys for Defendant

000226

Velma L. Hamilton

vs.                                    Case No. A 33420

Milo G. Hamilton                                    7

Attorneys:    For Plaintiffs_____

               For Defendants_____ Grey Dresie _____

Date Filed__1-22-64_____

Motion_____ by deft for change of custody _____

Last Ruling:

JUDGE RAUM    *Heard — denied*_____ Date FEB 3 1964

_____ Date_____

_____ Date_____

_____ Date_____

_____ Date_____

Journal Entry Filed _____

**000227**



DEPUTY

IN THE DISTRICT COURT OF SEDGWICK COUNTY, KANSAS

VELMA L. HAMILTON,                    )
                    Plaintiff,        )
                                      )
        -vs-                          )
                                      )
                                      )
                                      )
MILO G. HAMILTON,                     )
                    Defendant.        )      Case No. A-33420
                                      )
_____ )

### ANSWER TO APPLICATION FOR CHANGE OF CUSTODY

COMES NOW, Velma L. Purkey, formerly Velma L. Hamilton, Plaintiff, in the above entitled cause and for Answer to the application for change of custody filed herein by the Defendant, Milo G. Hamilton, denies each, every, all and singular, the allegations of said Petition, and further shows to the Court that on the 16th day of October, 1953, in the Probate Court of Sedgwick County, Kansas, in Case No. A-3302, that Gary Hamilton was adopted by Jack Wesley Purkey and Velma Louise Purkey, his wife, and that his name was changed to Gary Milo Purkey, thereby severing the parental relations between Milo G. Hamilton and Gary Milo Purkey.

The Plaintiff further states that subsequent to said adoption, that the said Milo G. Hamilton, has not contributed to her or the support of said minor child, but that in the summer of 1963 the minor child, Gary Milo Purkey, spent two weeks with the defendant, and spent some time at Christmas in 1963.

WHEREFORE, the plaintiff prays that the Court enter an Order finding that the adoption is Res Ad Judicati to the parental

000228

COUNTY OF SEDGWICK )

VELMA L. PURKEY, of lawful age, being first duly sworn on oath says:

That she is the plaintiff in the above entitled action and has read the above and foregoing Answer to Application for Change of Custody and knows the contents thereof, and that the statements therein contained are true and correct.

*Velma L. Purkey*
VELMA L. PURKEY

Subscribed and sworn to before me on this 24th day of January, 1964.

_____
NOTARY PUBLIC

My Commission Expires:

000229

IN THE DISTRICT COURT OF SEDGWICK COUNTY, KANSAS

VELMA L. HAMILTON,
              Plaintiff,

    -vs-

MILO G. HAMILTON,
              Defendant.

Case No.   A-33420

## MEMORANDA IN CONFORMITY WITH RULE 114

In support of the answer in support of the application for change of custody, the attorney for the plaintiff sites 59-2103 General Statutes of Kansas, 1949.

OWEN J. REDMOND, JR.
Attorney for Plaintiff

000230

IN THE DISTRICT COURT OF SEDGWICK COUNTY, KANSAS

VELMA L. HAMILTON,   Plaintiff, )
              )
              )
     vs        )  No. A-33420
              )
              )
MILO G. HAMILTON,   Defendant. )

<u>AFFIDAVIT OF MILO G. HAMILTON</u>

STATE OF ARKANSAS )
        ) SS
COUNTY OF PULASKI  )

   MILO G. HAMILTON, of lawful age, being first duly sworn on oath states and says:

   That he is the defendant in the above-entitled cause of action; that he has caused to be filed therein an application to modify the order of this court made on the 27th day of September, 1950, by giving custody of Gary, the minor child of the parties hereto, to the defendant, this affiant, and in support of such application your affiant states and says:

   1. That he is now a resident of North Little Rock, Arkansas; that he is employed as a credit manager for the Davidson Furniture Company in that city; that he has remarried, has a home with adequate room, as well as adequate financial means to care for the said Gary; that there is available appropriate schooling for the said minor child; that he has been informed and does believe that the said minor child is at the present time not passing in his school work and is in need of parental guidance of a father, and that this affiant is ready,

000231

the proper environment and parental guidance the said minor

child would be benefited considerably and would in all

probability be restored to passing effort in his school work.

Further affiant saith not.

_____
Milo G. Hamilton

Subscribed and sworn to before

me this 21 day of January, 1964

_____
Notary Public

My commission expires:

_____

Certificate of Clerk of the District Court. The above is a true and correct copy of the original instrument which on file or of record in this court.
Done this _____ day of _____ 19__
JOANN DUAN, Clerk, By _____ Deputy

**000232**

IN THE DISTRICT COURT OF SEDGWICK COUNTY, KANSAS

VELMA L. HAMILTON,              Plaintiff. )
                                           )
            vs                             )        No. A-33420
                                           )
                                           )
MILO G. HAMILTON,               Defendant. )

APPLICATION FOR CHANGE OF CUSTODY

COMES NOW Milo G. Hamilton, defendant in the above-entitled cause, and asks the court to modify the order made on the 27th day of September, 1950, by changing the custody of the minor child Gary from the plaintiff to the defendant and by issuing an order allowing the defendant to take the said minor child to North Little Rock, Arkansas, for residence and schooling, and in support of this application defendant states and says:

1. That the said minor child is now fifteen years of age; that he has expressed a desire to reside with the defendant; that it is at the said minor's request and instance that the defendant presents this application; that at the present time the said minor child is not passing in school and that the defendant feels that he could provide the proper environment and atmosphere for the rearing and schooling of the said minor child.

2. It is further requested that this application be specially set for oral argument in order that the said Gary not miss more school than is necessary at this time.

WHEREFORE, said defendant prays that the court modify the said order of September 27, 1950, by .......

000233

of said minor child to this defendant and authorizing this defendant to remove said child to North Little Rock, Arkansas, and that the court specially set this application for oral argument.

DRESIE & JORGENSEN

By _____
Attorneys for Defendant

STATE OF ARKANSAS   )
                    )  SS
COUNTY OF PULASKI   )

MILO G. HAMILTON, of lawful age, being first duly sworn on oath states and says:

That he is defendant in the above-entitled-action that he has read the above and foregoing APPLICATION FOR CHANGE OF CUSTODY and knows the contents thereof, and that the statements therein contained are true and correct.

_____
Milo G. Hamilton

Subscribed and sworn to before me this _____ day of January, 1964.

_____
Notary Public

My commission expires:

_____

000234

AMherst 7-4231

IN THE DISTRICT COURT OF SEDGWICK COUNTY, KANSAS

VELMA L. HAMILTON,              Plaintiff,     )
                                               )
                                               )
                                               )
            vs                                 )
                                               )  No. A-33420
MILO G. HAMILTON,               Defendant.     )
                                               )
                                               )
_____       )

ORDER FOR HEARING

NOW, on this _____ day of January, 1964, the defendant, by and through his attorney, Grey Dresie of the firm of Dresie & Jorgensen, files his application for change of child custody and asks that such matter be set down for hearing.

The court being advised in all the premises finds that such matter should be set for hearing before this court on the 24th day of January, 1964, at ____ o'clock __ m. and that notice thereof should be given to the plaintiff by the attorney for the defendant by personally giving to said plaintiff a copy of said application, together with the supporting affidavit and this order setting the same for hearing.

IT IS THEREFORE BY THE COURT SO ORDERED.

TOM RAUM
_____
Judge

APPROVED:

DRESIE & JORGENSEN

000235

IN THE DISTRICT COURT OF SEDGWICK COUNTY, KANSAS.

VELMA L. HAMILTON,        )
                          )
                Plaintiff, )
                          )
    -vs-                   )
                          )
MILO G. HAMILTON,         )        Case No.  A-33420
                          )
                Defendant. )

O R D E R

NOW, on this 24th day of January, this matter comes regularly on for hearing on the Order heretofore issued by the Court on the 22nd day of January, 1964, and the plaintiff appears in person and by her attorney, Owen J. Redmond, Jr., and the defendant appears in person and by his attorney, Grey Dresie of Dresie and Jorgensen.  Gary Purkey, formerly Gary Hamilton, appeared in person.

Whereupon, the hour of eleven o'clock having arrived, and the Court proceeded the hearing of this matter, which hearing continued until twelve o'clock and was recessed until four o'clock the afternoon of January 24, 1964.

The hour of four o'clock P.M. having arrived and the parties appearing as aforesaid, the Court proceeded the further hearing of this matter, and the hour of five o'clock P.M. having arrived, the Court adjourned this matter to Thursday, January 30, 1964.

The hour of four o'clock P.M. having arrived on January 30, 1964, the plaintiff appears in person and by her attorney Owen J. Redmond, Jr., the boy, Gary Purkey, formerly Gary

000236

not, but appears through his attorney Grey Dresie, of Dresie & Jorgensen, and the Court proceeded to hear evidence until the hour of five o'clock, at which time the Court announced they would take said matter under advisement, and would hear oral arguments, and make final decision in this matter on February 3, 1963, at the hour of three o'clock P.M.

The hour of three o'clock P. M. having arrived Februar 3, 1964, the court upon motion of Grey Dresie heard further evidence from Gary Purkey, formerly Gary Hamilton, who informed the court that he no longer desired to go to Arkansas to live with the movant, Milo G. Hamilton.

Whereupon, Grey Dresie announced to the court he had no authority to withdraw the application but in view of the evidence he would not press the same.

The court thereupon announced that such motion would be overruled.

IT IS THEREFORE ADJUDGED AND DECREED BY THE COURT that the motion of the defendant herein, for a change of custody should be and is hereby overruled.

_____
TOM RAUM
Division No. 7

Submitted by:

_____
OWEN J. REDMOND, JR.
Attorney for Plaintiff

000237

KANSAS STATE BOARD OF HEALTH
Division of Vital Statistics

**CERTIFICATE OF DEATH**

CITY    JAN 6 1950    7594    49 018374

IN THIS SPACE

Birth No. B# 5383 yr. 49    Registrar's No. 2089 1575

| 1. PLACE OF DEATH | | | 2. USUAL RESIDENCE (Where deceased lived. If institution: residence before admission). | |
|---|---|---|---|---|
| a. County Sedgwick 287 | | | a. State Kansas   b. County Sedgwick | |
| b. City (If outside corporate limits, write RURAL and give township) OR Town Wichita | c. LENGTH OF STAY (In this place) 2 days | | c. City (If outside corporate limits, write RURAL and give township) OR Town Wichita 287 | |
| d. FULL NAME OF (If not in hospital or institution, give street address or location) HOSPITAL OR INSTITUTION Wichita Hospital | | | d. STREET ADDRESS (If rural, give location) 122 So. Sedgwick | |

| 3. NAME OF DECEASED (Type or Print) | a. (First) Larry | b. (Middle) Gene | c. (Last) HAMILTON | 4. DATE OF DEATH (Month) (Day) (Year) Dec. 5, 1949 |
|---|---|---|---|---|

| 5. SEX male | 6. COLOR OR RACE white | 7. MARRIED, NEVER MARRIED, WIDOWED, DIVORCED (Specify) single | 8. DATE OF BIRTH ████ | 9. Age (In years last birthday) 0   If under 1 yr. Months 0 Days 2   If under 24 hrs. Hours Min. |
|---|---|---|---|---|

| 10a. USUAL OCCUPATION (Give kind of work done during most of working life, even if retired) none | 10b. KIND OF BUSINESS OR INDUSTRY none | 11. BIRTHPLACE (State or foreign country) Wichita, Kansas | 12. CITIZEN OF WHAT COUNTRY? USA |
|---|---|---|---|

| 13. FATHER'S NAME Milo Garren Hamilton | 14. MOTHER'S MAIDEN NAME Velma Louise Johnson |
|---|---|

| 15. WAS DECEASED EVER IN U. S. ARMED FORCES? (Yes, no, or unknown)(If yes, give war or dates of service) | 16. SOCIAL SECURITY No. | 17. INFORMANT Milo Hamilton, Wichita, Kansas |
|---|---|---|

18. CAUSE OF DEATH
Enter only one cause per line for (a), (b), and (c)

\* This does not mean the mode of dying, such as heart failure, asthenia, etc. It means the disease, injury, or complication which caused death.

**MEDICAL CERTIFICATION**

I. DISEASE OR CONDITION DIRECTLY LEADING TO DEATH* (a) Congenital abnormality of heart

ANTECEDENT CAUSES
Morbid conditions, if any, giving rise to the above cause (a) stating the underlying cause last.    DUE TO (b) _____

DUE TO (c) _____    1572

II. OTHER SIGNIFICANT CONDITIONS
Conditions contributing to the death but not related to the disease or condition causing death.

INTERVAL BETWEEN ONSET AND DEATH

| 19a. DATE OF OPERATION | 19b. MAJOR FINDINGS OF OPERATION | 20. AUTOPSY? Yes [X] No [ ] |
|---|---|---|

| 21a. ACCIDENT SUICIDE HOMICIDE (Specify) | 21b. PLACE OF INJURY (e.g., in or about home, farm, factory, street, office bldg., etc.) | 21c. (CITY, TOWN, OR TOWNSHIP) (COUNTY) (STATE) 7594 |
|---|---|---|
| 21d. TIME OF INJURY (Month) (Day) (Year) (Hour) m. | 21e. INJURY OCCURRED while at work [ ] not while at work [ ] | 21f. HOW DID INJURY OCCUR? |

22. I hereby certify that I attended the deceased from 12-3, 1949 to 12-5, 1949 that I last saw the deceased alive on 12-5, 19 49, and that death occurred at 8:05 A.m., from the causes and on the date stated above.

| 23a. SIGNATURE George E. Cowles M.D. (Degree or title) | 23b. ADDRESS Dr. Cowles 435 No. Hillside, Wichita, Ks. | 23c. DATE SIGNED 12/7/49 |
|---|---|---|

| 24a. BURIAL, CREMATION, REMOVAL (Specify) Burial | 24b. DATE 12-6-49 | 24c. NAME OF CEMETERY OR CREMATORY Calvary Cemetery | 24d. LOCATION (City, town, or county) Wichita, Kansas | (State) |
|---|---|---|---|---|
| DATE REC'D BY LOCAL REG. Dec. 8, 1949 | REGISTRAR'S SIGNATURE C C Ellis 575 | 25. FUNERAL DIRECTOR Culbertson Mortuary, Wichita, Kansas | | ADDRESS |

000238

## DECLARATION OF GARY MILO PURKEY

I, Gary Purkey, declare and state the following:

1. My name is Gary Milo Purkey. I am Wesley's older brother; he is four years younger than me. I am a resident of Laramie County, Wyoming and am 69 years old. On October 5, 2007 I provided a signed declaration to Wesley's defense team. I went by Gary Hamilton then. Although there was more I wished to share at the time I did not because I did not know the people working on Wesley's case very well. These are difficult experiences and memories to talk about. I had not had a good experience with Wesley's trial attorney Fred Duchardt and it made me very reluctant to share additional information with people I did not know well. I am doing so now because I have gotten to know members of Wesley's team and finally feel able to share these additional memories.

2. Wesley and I were mainly raised by our mother Velma, our maternal great aunt Carrie Burke, who we called GaGa, and our maternal grandmother Bobby Sue. GaGa and Bobby Sue were sisters. Bobby Sue was married to O.L. Darling. That was not our momma's daddy, but he was the only grandpa we knew on that side of the family. They were our primary caretakers. Jack Purkey was in our lives until I was about 14 years old. Wesley idolized me growing up. Whenever he got something from GaGa he would say "Gay want one". That was what he called me when he was little. Wesley had trouble speaking clearly growing up.

3. Besides me and Wesley, our momma had two other sons that I know of. Their names were Larry and Garren. I believe my biological father, Milo Garren Hamilton, was their father. Larry died two days after he was born. He was born about a year after me in 1949. Garren was born before me and died at birth. Momma would get drunk and talk about these babies. She cried and cried while doing so. She'd say there were two little angels watching over me.

1 | P a g e

G̲M̲P̲ (Initial)

000239

Otherwise, she didn't talk about them. When I was an adolescent I found two little cushion things in momma's dresser drawer, which I was looking in for money. Inside the cushions were two photographs of babies in caskets.

4. O.L. Darling was a terrible man. For one, he was a womanizer and tried to hit on any lady he could. For instance, Bobby Sue had a brother who we called Uncle Bill. He was a diabetic and died of a stroke at the Topeka Hospital in 1967. He was Wesley's godfather. I was there with momma and grandma when he died. Sometimes I would go visit his widow, Aunt Irene. I remember one visit where Darling hit on her. He tried to sleep with her. She spit in Darling's face. He tried to sleep with everyone but his own wife. I have been married twice and he made passes at each one of my wives. The time he did that with my second wife Becky, she hit him in the head with a phone receiver.

5. GaGa was the most stable person in our lives. She talked about the horse and buggy days when we were little. She told us lots of stories. Her husband, John Burke, was a bootlegger from Texas. He died long before Wesley and I were born. I heard he did some time in prison years before I was even born. GaGa talked about all the places she went and people she met with him. She talked about Al Capone and Capone's brother who she met. She talked about the food lines and having to wait with people for rations during the Depression sometimes, too. Bobby Sue didn't talk about any of that stuff. She didn't talk about her family or where she came from.

6. As little kids Wesley and I went over to our grandparents' house, Jack's parents. Grandpa Ira Purkey was very smart. He was some sort of operator. He had headphones in his house, which was a novelty back in the 1950s. Sometimes he took me into a room where he kept the headphones and let me listen. Grandpa Ira said I was listening to people overseas, people in

**2 |** P a g e

$G w P$ (Initial)

**000240**

Germany or Japan. Grandma Opal was real short, with these beady little eyes. She had a little nose and cropped hair. She wore big glasses over her eyes. Ira was tall and thin.

7. Visits to Grandpa Ira and Grandma Opal's house stopped when Jack and my momma divorced. I was about 14 years old then. Wes was about 10. Before the divorce we used to play over there with our little cousins from that side of the family, but we saw less and less of them. I was particularly close with my aunt, Marguerite's son, Danny, when we were younger. Danny used to visit us when we lived on Clarence Street with momma. He spent nights with us. His mom and sisters were there, too. They came down from the country to stay in the city and usually stayed with us. During the summers I went out to stay with them on their farm. Me and Danny rode horses bare back through the country. I loved riding horses. I loved going out there, but I never did after momma and Jack divorced.

8. Even so, I had a hard time with my dad's family. Because Jack adopted me some of my aunts and uncles treated me like I was a bastard child. I wasn't, in their eyes, a real Purkey. It changed every time I saw my grandparents. That was a hard way to grow up. When I got older I changed my name to Hamilton to try and start over, but at the end of the day I am a Purkey.

9. When I was real little and Wesley was just a baby we lived in Hoover Orchard, a neighborhood on the west side of Wichita. That's before we moved to Clarence Street. I went to Holy Savior Catholic School and then to Christ the King after that. I attended St. Joseph's Catholic School from 2nd to 8th grade. After St. Joseph's I attended Allison. It was the public junior high school in our neighborhood. I started the 9th grade there but got kicked out a few months after I started because I wasn't showing up to school and got in fights. After Allison I tried to enroll in another school, but Allison didn't release my school records, so I didn't

*G.m.P* (Initial)

enroll. I gave up trying to get the records. Later I got my GED while in prison at the Kansas State Reformatory in Hutchinson, Kansas.

10. At St. Joseph's we had to attend Mass every morning at 8 am. All the students had to be there. If a student ever missed they got whacked on their head or hands with a ruler pointer. That was the nuns' preferred discipline. It was a piece of metal shaped like a pointer at the end of the big rulers. The nuns poked or whacked the students with it. I got whacked lots of times by the nuns.

11. When Wesley was a kid he could barely speak his stutter was so bad. He couldn't get words out of his mouth. Kids made fun of him at school. They also made fun of him for his big buck teeth. They were real bucked as a kid. Kids used to call him Bucky the Beaver cause of those teeth. Wesley's stutter is so much better now than it was when he was a kid. He has really worked on it.

12. When Wesley and I went to church at St. Joseph's Parish, people whispered about our momma. They wanted to kick her out from the church cause she wasn't married and had a lot of boyfriends. They called her a slut and a drunk. It hurt me then and it still hurts me now. She was my momma and despite all the things she did to me and Wesley, I still love her.

13. Sometimes Wesley blacked out. There were times he woke up in the mornings in other people's houses and didn't know where he was. He'd come to and get out. He'd come home and say he just came to in someone's house and he couldn't remember how he got there. I always figured it was from one of his head injuries in car wrecks. One time he was in the hospital for several days after a semi-truck slammed into his '57 Chevy. The truck ran a red light and hit Wesley's side of the car. A year or two later Wesley went back into the hospital after a vehicle slammed into Wesley's car while he worked on the engine under the hood.

4 | P a g e                                                                                    *G. mp* (Initial)

000242

14. Peggy Marteney was a good friend of mine and Wesley growing up. She was always around. Her mom was good friends with our momma from their school days. We were raised close. We grew up with all the Marteney kids. Bill was the oldest, but there was Mike and Peggy, and others too. We played in the neighborhood as little kids and we all went to St. Joseph's together. Mike did a lot of time in prison before he died. Peggy is dead now, too.

15. I knew Wesley's ex-wife Claire. She was a whacked-out bitch. Trouble always followed her wherever she went. I remember hanging out with her once in Wichita. Wesley was locked up at the time, but they were still together. We were partying and Claire confessed to me that she was sleeping with Wesley's friend. Claire did that to Wesley often. She was always flirtatious. It drove Wesley nuts. Claire ran around behind him a lot. She was not trustworthy.

16. I was diagnosed with bi-polar disorder in the past. I am manic sometimes and other times I get real depressed. I have seen shrinks, been prescribed medications, and have done counseling over the years, but none of it really helped. The thing that helped most was being with my wife Becky. I met Becky when we were both patients at Larned State Hospital. She changed me. She loved me for who I was. She's the one that got me out of Wichita. Wichita was poison. I am sure I would be long dead or locked up for life if I kept living there. She got me out and away from everything. She saved me. She taught me what love was. I hadn't known what real love was before her. When Becky died I didn't know what to do. All I knew was the life I had before her, so I went backwards into drugs again. Our daughter Tanya saved me from that. I have been sober for two years now.

17. I needed to be approached the right way in order to talk about these things. I love Wesley even though we have had our differences over the years. I have always wanted to be as helpful as possible, but it's not so easy to sit and talk to total strangers about all of this. I did

5 | P a g e                                                                                    رمح(Initial)

the best I could over the years when asked. Had Mr. Duchardt visited me without his son, or shown any real interest in getting to know me, I would have been able to share this information with him.  It has not been until the last two years that members of Wesley's defense team have taken the time to listen to me and my stories without me feeling pressured to tell them.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Signed on this ₃ 𝒴 day of November, 2017.

_____
Gary M. Purkey

6 | P a g e

G𝓂𝓅 (Initial)

**000244**

# Milo G Hamilton
## in the U.S., Social Security Death Index, 1935-2014

| | |
|---|---|
| Name: | Milo G Hamilton |
| BORN: | ███████ |
| Died: | 26 Nov 2013 |
| State (Year) SSN issued: | Arkansas (Before 1951) |

**Source Citation**

Issue State: *Arkansas*; Issue Date: ~~Before 1951~~ ████████████

**Source Information**

Ancestry.com. *U.S., Social Security Death Index, 1935-2014* [database on-line]. Provo, UT, USA: Ancestry.com Operations Inc, 2014.

Original data: Social Security Administration. *Social Security Death Index, Master File*. Social Security Administration.

**Description**

The Social Security Administration Death Master File contains information on millions of deceased individuals with United States social security numbers whose deaths were reported to the Social Security Administration. Birth years for the individuals listed range from 1875 to last year. Information in these records includes name, birth date, death date, and last known residence. Learn more...

© 2018, Ancestry.com

**000245**

217

# MARRIAGE LICENSE RECORD H H H

### APPLICATION AND AFFIDAVIT FOR MARRIAGE LICENSE

No. 47548

STATE OF KANSAS, COUNTY OF SEDGWICK, ss.: IN THE PROBATE COURT IN AND FOR SAID COUNTY AND STATE

_Jack H. Purkey_ _Wichita_, State of _Kansas_, hereby makes application to marry _Velma L. Johnson_ of _Wichita_, State of _Kansas_ and further applies for a marriage license addressed to any person authorized by law to unite said parties in marriage; being duly sworn deposes:

That the said _Jack H. Purkey_ is _27_ years of age and that he has no living wife and that the said _Velma L. Johnson_ is _25_ years of age and that she has no living husband.

That said contracting parties are not related to each other in any of the degrees prohibited by law, to-wit: Parent and child, grandparent and grandchild in any degree, brother and sister of the whole or the half blood, uncle or niece, aunt or nephew, nor first cousins, and neither has been divorced within the past six months.

That neither of said parties is or has ever been epileptic, imbecile, feeble minded or insane; or if either is or has ever been afflicted, then that the woman is more than forty-five years of age.

That neither of said parties was born subsequent to the insanity of either of his or her parents, or if so that the woman about to be married is more than forty-five years of age. And that there is no legal impediment to such marriage, to the best of the affiant's knowledge and belief.

Further affiant saith not.

Subscribed and sworn to before me this _28_ day of _May_, 19_51_ _Jack H. Purkey_

_Irene Elliott_
Notary Public          Probate Judge

Commission expires _4/14/54_     (SEAL)

Marriage License issued _6-1-51_ No. _47548_     Health Certificate filed _6-1-51_ No.

State of Kansas, Central Division of Vital Statistics     No. _47548_

### MARRIAGE LICENSE     _June 1st_ 19_51_

P. J. No.

IN THE PROBATE COURT OF SEDGWICK COUNTY

TO ANY PERSON IN THE STATE OF KANSAS AUTHORIZED BY LAW TO PERFORM THE MARRIAGE CEREMONY, GREETING:

YOU ARE HEREBY AUTHORIZED TO JOIN IN MARRIAGE

_Jack H. Purkey_ of _Wichita, Kansas_ Age _27_

_Velma L. Johnson_ of _Wichita, Kansas_ Age _25_

with the consent of _____ (Name of Parent or Guardian Consenting) _____ and of this license duly endorsed, you will make return to my office at Wichita, Kansas, within ten days after performing the ceremony.

_C. Mark Bryant_
(SEAL)          Probate Judge

### ENDORSEMENT

TO WHOM IT MAY CONCERN:

I certify that I performed the ceremony joining in marriage the above named couple, on the _2nd_ day of _June_ 19_51_, at _Wichita, Ka._

Section 5. Every person who shall perform any marriage ceremony under the provisions of this act, shall, within ten days after such marriage, return the said license to the Probate Judge who issued the same with his certificate of such marriage endorsed thereon, etc.

NOTE—After recording, the Probate Judge shall forward this original marriage license to the State Registrar at Topeka, Kansas, not later than the third day of the following month.

Signed _C. A. Lockhart_

Title _Justice of the Peace_

Address _1642 S. Emporia_

### APPLICATION AND AFFIDAVIT FOR MARRIAGE LICENSE

No. 47563

STATE OF KANSAS, COUNTY OF SEDGWICK, ss.: _George Dewey Sturbann_ _Wichita_ IN THE PROBATE COURT IN AND FOR SAID COUNTY AND STATE

000246

## CERTIFICATE OF LIVE BIRTH

**KANSAS STATE BOARD OF HEALTH**
Division of Vital Statistics

FEB - 6 1952

**CITY**   Registrar's No. 45

**BIRTH NUMBER**

DO NOT WRITE
52 002364
IN THIS SPACE

| 1. PLACE OF BIRTH | | 2. USUAL RESIDENCE OF MOTHER (Where does mother live?) |
|---|---|---|
| a. County Sedgwick 872 | | a. State Kansas    b. County Sedgwick |
| b. City (If outside corporate limits, write RURAL and give township) or Town Wichita | | c. City (If outside corporate limits, write RURAL and give township) or Town Wichita 872 |
| e. Full Name of (If NOT in hospital or institution, give street address or location) Hospital or Institution St Joseph Hospital | | d. Street Address (If rural, give location) 124 N Sedgwick |

| 3. CHILD'S NAME (Type or print) | a. (First) WESLEY | b. (Middle) IRA | c. (Last) PURKEY |

| 4. SEX Male | 5a. THIS BIRTH Single ☒  Twin ☐  Triplet ☐ | 5b. IF TWIN OR TRIPLET (this child born) 1st ☐  2nd ☐  3rd ☐ | 6. DATE (Month) (Day) (Year) OF BIRTH ▮▮▮▮▮ |

**FATHER OF CHILD**

| 7. FULL NAME | a. (First) Jack | b. (Middle) Wesley | c. (Last) Purkey | 8. COLOR OR RACE W |
| 9. AGE (at time of this birth) 28 YEARS | 10. BIRTHPLACE (State or foreign country) Topeka Kans | 11a. USUAL OCCUPATION Production Foreman | 11b. Kind of Business or Industry Boeing |

**MOTHER OF CHILD**

| 12. FULL MAIDEN NAME | a. (First) Velma | b. (Middle) Louise | c. (Last) Johnson | 13. COLOR OR RACE W |
| 14. Age (At time of this birth) 26 YEARS | 15. BIRTHPLACE (State or foreign country) Wichita Kans | 16. CHILDREN PREVIOUSLY BORN TO MOTHER (Do NOT include this child) | | |

16. CHILDREN PREVIOUSLY BORN TO MOTHER: a. How many OTHER children are now living 1 ; b. How many OTHER children were born alive but are now dead? 0 ; c. How many children were stillborn (born dead after 20 weeks pregnancy)? 0

| 17. INFORMANT Mrs Purkey |

| I hereby certify that this child was born alive on the date stated above. | 18a. SIGNATURE Edward Crowley M. D. | 18b. ATTENDANT AT BIRTH M.D. ☒  Midwife ☐  Other (specify) |
| | 18c. ADDRESS Wichita, Kansas | 18d. DATE SIGNED Jan. 9-1952 |

| 19. DATE REC'D BY LOCAL REG. JAN 10 1952 | 20. REGISTRAR'S SIGNATURE | 21. DATE ON WHICH GIVEN NAME ADDED By (Registrar) |

000247

WP_PC000098704

## Declaration of Marguerite Hotchkiss

I am Wesley Ira Purkey's aunt. His father, Jack Purkey, was my brother.

Wes' attorney, Fred Duchardt, called me several times and asked me the same questions over and over, but he didn't tell me what I'd be asked when I went to testify. He didn't tell me anything about it except the address of the place in Springfield. Nobody ever prepared me for what would take place there.

My daughter, Debbie Prothero, and her husband, Russ Prothero, took me up to Springfield to testify on Wes' behalf. We waited a long time. No one was there. They led me to a room all by myself. Mr. Duchardt didn't tell me I'd be testifying by video. It really surprised me to be led into a room all by myself and sit down in a chair without anybody telling me what to do. I thought my daughter and son-in-law could be with me, just like in a courtroom. When things started, I was looking at a screen, but couldn't see anybody. I could only see Fred from the neck down. I was appalled. I thought I'd be talking to a person, not a television. I don't think that it could have helped Wes any. It was very uncomfortable and frustrating. The only thing they asked was, "How do you feel about your nephew? Do you love him?"

We all really love Wes. We felt sorry for him when he was a boy. His parents were drinkers and smokers, and there's just no way to describe how it was when he was little. All he could do was point and grunt. He couldn't speak at all; he didn't speak until he was six years old. There was something very wrong. He acted like a little animal, just pointing and going, "uh, uh, uh." If you came in and tried to hug him, he'd scream and run away. His parents didn't seem to even notice that it wasn't right behavior. He seemed to be the black sheep of his family. We always felt sorry for him. That is an indelible memory upon my mind and heart.

My mother, his grandmother, was a dedicated Christian. She loved everyone. Velma would drop the boys off at my parent's home many, many times, but she usually wouldn't stay because she didn't like being there. Velma was known as a "party girl". Our family didn't drink or smoke. My mom wouldn't let her smoke or drink in the house. Mother would often watch Wes and Gary, hoping her influence would help them. She wanted to help Wes. She and I would cry together when we thought about and talked about him. It was just so sad.

I remember we all wondered what kind of man he would be when he grew up because he couldn't even talk; once he did begin to speak, he stuttered very badly. I think from the very beginning everyone knew he would need to be in a hospital or somewhere that would help him. There was just no way he would be able to take care of himself or know how to function, especially because of the horrible life his parents lived.

Once my husband and I went over to Velma and Jack's house. It smelled awful, like liquor and cigarettes. All you could hear was they yelling at the kids. There didn't seem to be any love for them. I remember thinking, "He'll end up in a hospital

000248

somewhere." We never thought it'd be prison. But he never got the help he needed when he was young. My husband used to say he needed help when he was younger, people shouldn't wait until it's too late. When I heard what his mother and brother had been doing to him, I was horrified, but I can believe it, looking back now. It's really sad to see a young man end up behind bars because of something he couldn't control. My husband and our family moved to Hawaii when he was only 12. And my mother and father died when he was only 16. There was no one around to help him learn how to be a good, normal, hard-working man. If we'd been close, we could have been there to help. I think my mother's home was the only safe haven he had. My mother grieved herself to death over it.

Stuttering ran in our family. In fact, I'm the only one of the siblings who didn't stutter to some extent. Some weren't so bad, but Jack also stuttered. He was a good, kind man, but he had a terrible accident when he hit his head on the windshield. After surgery, he had a metal plate in his head that caused him to be in constant pain. We think it was Velma who gave him the idea to start drinking to help with the pain. The alcohol totally ruined his life. Velma divorced Jack and married another man. That's when she had Gary. Then, she divorced that husband and married Jack again, and they had Wesley. As an alcoholic, Jack just couldn't provide for his family, and every time he and Velma had a fight, he'd end up running back to our mother and father's house. They let him stay up in his old room instead of counseling him to get help and work out their problems. He just couldn't cope and he was no help to the boys.

When I flew back to Wichita from Hawaii for my father's funeral, I heard Wes had been in an accident and had a horrible head injury; like his father. But we didn't hear any more or have any contact for years. When Jack shot himself, it nearly broke my heart with grief. My sisters and I met in Wichita to make his arrangements. That is when we got Wes' address in prison. We were so sad that it had come to this. It grieves me how his life has turned out, but I don't know how it could have gone in any other direction considering the awful living conditions he had as a child. Wes and I used to write one another. (Now it's too difficult for me, but I still love and pray for him. My daughter keeps me up to date about him.) When he was in Oregon in prison, I was able to visit him with my sister, Irene. He stuttered so badly, I could hardly understand one word he said. The whole way there and back, we cried. It wasn't his fault.

Wes writes very well. In fact, I put a couple of his poems in a family scrapbook that I put together for my family. They are very touching. I know he could do a lot of good for people with the rest of his life.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

This, the 25th day of January, 2008

_Marguerite Hotchkiss_
Marguerite Hotchkiss

000249

IM-1503 Rev. 10-69
LSH-360-Rev.

# RELEASE SUMMARY

## LARNED STATE HOSPITAL
Larned, Kansas

IDENTIFYING INFORMATION:                    BUILDING Voc.Rehab.
                                                     Pinel

Name PURKEY, Wesley Ira    Age 20    Race White    Case Number 20,655

Marital Status Never Married          Occupation Welder

admitted to the Larned State Hospital for the 1st time from Sedgwick

County on 12-29-72 _____ on a ___ Voluntary ___ basis
              (date of admission)              (type of admission)

DATE & TYPE OF RELEASE Temp. Visit 3-16-73; Extended 3-30-73
                        Discharged while on Temp. Visit: 4-13-73

The attending physician was D. H. Davis, M. D. _____ and the final

This information has been disclosed to you from records whose confidentiality is protected by Federal Law. Federal regulations (42 C.F.R., Part 2) prohibit you from making any further disclosure of it without the specific written consent of the person to whom it pertains, or as otherwise permitted by such regulations. A general authorization for the release of medical or other information is NOT sufficient for this purpose.

diagnoses were: PHYSICAL Healthy Male

**CONFIDENTIAL**

**FURTHER DISCLOSURE**

**PROHIBITED**

PSYCHIATRIC Passive Aggressive Personality with
             Depressive Features.

## REASON FOR ADMISSION:

According to the patient's parole office, Mr. Robert Lindt, Wichita, the patient was having problems while serving parole for burglary, first degree. After several incidents including a charge of joy riding, the parole board gave Wes a choice to enter Larned State Hospital and obtain vocational training or have his parole revoked. He chose to enter the hospital.

## PERTINENT FINDINGS AT THE TIME OF ADMISSION:

1. Physical examination Ht 6'1" wt 173, T 98.6 P 100, BP 130/70 Scar forehead. Tattoo forearms.

2. Routine laboratory, X-ray and Special Examinations :VDRL: Non-Reactive BLOOD MORPHOLOGY: Hgb. 15.4, MCHC 35.5, WBC 7,100, Hematocrit 43%, Count 100, Baso. 1, Eosins. 1, Stabs. 2, Segs. 56, Lymphs. 40  BLOOD SUGAR: 2 hr pc 77, BUN 7.0, URINALYSIS: Color - yellow, Character - hazy, Reaction 6.0, Specific Gravity 1.023.WBC 10-12-/hpf, Ep.Cells 1-2/hpf,

3. Psychiatric examination Wesley was cooperative, well oriented as to time, place and person. His thought content was centered with his problems with the law. He was some- what depressed. He evidenced poor judgment and has some difficulties in accepting responsibilities. No distortions of perception or hallucinatory experiences could be elicited. His memory seemed to be preserved for all events and his intelligence seemed to be in the average range. His thought process was logical, coherent and in relation to his hospitalization and his

(continued on page two)                    Cont'd.

**000250**

PATIENT'S NAME ___ Purkey, Wesley I. ___ CASE NO.20,655 ___

ROUTINE LABORATORY:  Bacteria - occ., Yeast 1+. Normal Chest.

PSYCHIATRIC EXAMINATION:  Continued from Page 1

problems with the law.  His mood was appropriate to the situation. He admitted having severalb problems with the law and admitted to being jailed twice after he left KSIR because of drinking problems.

**000251**

Purkey, Wesley I.    20,655

Wesley Perkey entered T.O.W.E.R. January 15, 1973 completing January 19, 1973 He completed 6 vocational evaluations in 4 days.  The Kuder Personal and the Kuder Vocational Preference tests, Bass Orientation Inventory, and the G.A.T.B. were not given due to his low reading level of 6.2. The clerical and electronics evaluations were above average.  The machine shop, and sewing machine evaluations were average.  The drawing and workshop assembly were below average.  He has a fair spectrum of vocational potential, providing his poor listening habits and motivation improve.

Wes participated in the Resocialization Class from 2-5-73 to 3-2-73.  The instructors report stated that he participated in class discussions tho at times it seemed quite superficial.  He did well in all didactic material, attended classes regularly, and his grooming was good.  Wes was placed on a work evaluation at the Laundry and it was reported that he was a good worke even though he did not particularly like the job.

Wesley Perkey is ambulatory, capable of taking care of his personal needs and working.  He was placed on Temp. Visit 3-16-73; Extended 3-30-73 and Discharged while on Temp. Visit 4-13-73.  He left the Vocational Rehabilitation Unit for employment as a Welder with the Maywrith Company, Dodge City, Kansas.  He is residing at the Osage Apartments, 504 1st St. Dodge City, Kansas

RECOMMENDATIONS. (Instructive    : still    and    besides medication; referrals and plans for follow-up.)

Financial assistance and follow up services will be provided by

Vocational Rehabilitation.  Vivien Hanna is the Vocational Rehabilitation Counselor.

MEDIC    Sinequan - 25 mg. tid

DATE 5-4-73    UNIT

ATTENDING PHYSICIAN _____ m.D.    5-4-73    APPROVED

Section Chief

Dict: DHD  4-27-73
Typed: dc  5-3-73

000252

LSH-319(

SUMMARY OF HOSPITALIZATION
LARNED STATE HOSPITAL
Larned, Kansas

STAFF CONFERENCE NOTE
Page 1

IDENTIFICATION:

Patient _____ PURKEY, Wesley _____   Case Number 20,655   Section & Adult Unit / Building Pinel Bldg

Date of Staffing _____ 1-12-73 _____   Attending were Marcos Lara, M.D.; Robert Yc

Psychologist: Katherine Busse, Social Worker; Kathleen Garner, PA I; Dorothy Young,

Adj. Therapist.

ADDITIONAL INFORMATION NOT INCLUDED IN CASE SUMMARY:

The patient is attending his assignment regularly.  He also is quiet and cooperative

on the ward but he does not socialize with the other patients and could be considered

a loner.

SIGNIFICANT OPINIONS OF PARTICIPATING STAFF MEMBERS:

The patient seems to be an immature dependent individual who has some difficulty in

accepting responsibilities.  He has a long record of inappropriate and illegal behav:

This information has been disclosed to you from records whose confidentiality is protected by Federal Law. Federal Regulations (72 C.F.R., Part 2) prohibit you from making any further disclosure of it without the specific written consent of the person to whom it pertains, or as otherwise permitted by such regulations. A general authorization for the release of medical or other information is NOT sufficient for this purpose.

CONFIDENTIAL

FURTHER DISCLOSURE PROHIBITED

000253

SUMMARY OF HOSPITALIZATION
LARNED STATE HOSPITAL
Larned, Kansas

STAFF CONFERENCE NOTE, continued:

Page ___2___

Name ___PURKEY, Wesley___
Case No. ___20,655___
Section & Bldg. ___Adult Unit#1, Pinel Bld___

PROGNOSIS:

Good.

RECOMMENDATIONS:

1. He will be referred to Vocational Rehabilitation for TOWER testing to decide
   future placement.

ESTABLISHED DIAGNOSIS:

a. Physical ___Healthy male.___

b. Psychiatric ___Passive Aggressive Personality with Depressive Features.___
(Use official diagnostic nomenclature with code number)

Completed by:

| | | | |
|---|---|---|---|
| Robert Yohman | Katherine Busse | Kathleen Garner | Dorothy Young |
| Psychologist | Social Worker | P A I | Adj. Therapist |
| (Title) | | | |

Ward Physician   Marcos Lara, M.D. , M.D.

Date ___1-12-73___
ML:ccw   Dict: 1-12-73; typed: 1-29-73

2 of 2

000254

CONFIDENTIAL 1st Adm
FURTHER DISCLOSURE
PROHIBITED

LSH-365

This information has been disclosed to you from r[...]
w[...] is protected by Federal Law.
[...]
[...] or further disclosure of it without the sp[...]
written consent of the person to whom it pertains,
otherwise permitted by such regulations. A ge[...]
authorization for the release of medical or other inf
ation is NOT sufficient for this purpose.

SUMMARY OF HOSPITALIZATION
LARNED STATE HOSPITAL
Larned, Kansas

CASE SUMMARY

IDENTIFYING INFORMATION:

Name __PURKEY, Wesley Ira__  Age _21_  Race _White_  Case No. _20,655_

Marital Status ___Never Married___  Occupation _Welder_  Religion _Catholic_

admitted to the Larned State Hospital _Adult Unit #1_ , _Pinel_ , for the _first_ time
(section)          (building)

fr ___Sedgwick___ County on ___12-29-72___ on a ___Voluntary___ basis
(date of admission)          (type of admission)

Patient's status was changed to _____ on _____ .

REASON FOR ADMISSION:

According to the patient's parole officer, Mr. Robert Lindt, Wichita, the patient was having problems while serving parole for burglary, first degree. After several incident including a charge of joy riding, the parole board gave Wes a choice to enter Larned Sta Hospital and eventually obtain vocational training or to have his parole revoked. The patient chose to enter Larned State Hospital.

HISTORY OF ILLNESS: The patient had never been in any mental hospital until his present admission to Larned State Hospital. In the past few years he was arrested on 8-12-69 for burglary and attempted rape; 3-2-70 for burglary and larceny; 4-9-70 for burglary and attempted rape; and 7-29-70 for kidnap and attempted rape. We do not have the dis-position of these charges available. WEsley's first felony as an adult was burglary, 1st degree for which he was sentenced 10-21 on 9-1-70 by the Sedgwick County District Court. On 10-12-70 he was admitted to KSIR and on 10-22-70 was transferred to Kansas State Reception and Diagnostic Center for evaluation. Prior to the completion of his evaluation he was returned to the court, by court order, on 11-2-70. Subsequently he

1 of 4

000255

LSH-365

# SUMMARY OF HOSPITALIZATION
## LARNED STATE HOSPITAL
### Larned, Kansas

CASE SUMMARY, continued:

Page 2

Name PURKEY, Wesley Ira

Case No. 20,655    Section Adult Unit # 1

Building Pinel

REASON FOR ADMISSION AND HISTORY    HISTORY OF ILLNESS(continued):

was readmitted to KSIR on 3-11-71 and on 4-1-71 was transferred to Kansas State Reception and Diagnostic Center. He was given the diagnosis of Schizophrenia Reaction, Schizo-Affective Type, Depressed, superimposed upon a pre-existing antisocial personality characterized by selfishness, callousness, irresponsibility, impulsiveness, and the inability feel guilt or learn from experience and punishment. He was released on parole 7-18-72. His progress was very poor. On 10-4-72 he was placed in the halfway house in order to have a more structured environment until he became fully employed, which he never did. On 12-5-72 he went to his mother's house and took her car without permission. She filed a complaint against him for auto theft, which was reduced to joy riding. On 12-15-72 he pled guilty and received a sentence of 30 days and a $50.00 fine. These were suspended on the condition that he voluntarily submit himself to Larned State Hospital for evalua-

BACKGROUND INFORMATION:    tion and treatment. Also, the patient's parole officer states that he is hoping Wesley will receive Vocational Rehabilitation training while at Larned State Hospital and will be encouraged to seek employment in some area other than Wichita after discharge.

## BACKGROUND INFORMATION

The family background prior to and during the patient's childhood has been extremely chaotic. The patient's father and mother were married and divorced one month later in 1943. In 1944 the patient's mother married another man. The patient's half-brother, Gary Purkey, was born to this union on 5-20-48. In 1951 the patient's mother divorced her husband and remarried her first husband. Wesley was the only child born to them,

**000256**

C A S E   S U M M A R Y

Re: PURKEY, Wesley Ira

Page: IIa.

BACKGROUND INFORMATION(continued):

but his father adopted Gary. Wesley was born, healthy, on 1-6-52. His development was within normal limits. He began stuttering at a very early age and received speech therapy at the Institute of Logopedics in Wichita, Kansas, during his early school years. Also, prior to his school years, according to his aunt, he experienced what she described as polio, which affected the use of one leg. He got along well within the family setting during his early childhood. In 1962, when Wesley was 10 years old, his mother again divorced his father. The mother was employed and became neglectful of the children. According to the aunt, the mother became openly promiscuous and often brought her male friends into the home for sexual situations. The patient's father and mother both were always very heavy drinkers and the mother continued to have drinking problems. Therefore, Mrs. Burke, a great aunt who had lived with the family for several years, asked Wesley's mother to leave the home, which she did. When Wesley was ap-proximately 14, the court appointed his aunt as his legal guardian, as the whereabouts of the father were unknown. Wesley attended school thru the 8th grade, making average and below average grades.

During the 8th grade he was referred to the Wichita Psychiatric Center for evaluation because of his truancy and antisocial behavior at school, and primarily because of his physical complaints of headaches and dizziness for which his family physician could find no organic basis. He was subsequently admitted to St. Francis Hospital where a complete diagnostic checkup revealed that he was experiencing a serious personality disorder, centering around a psychosexual problem of identification. The recommendation was made that he be sent to BIS, but this was not carried thru. Therefore, Wesley began psychotherapy on an outpatient basis with Dr. F.C. Newsom in Wichita, Kansas. He was then referred to Dr. Paul G. Murphy, Ph.D.(Psychologist) where he remained in psychotherapy until his offense in 1970. Wesley also reports being in Lake Afton Boys Ranch for joy riding, car theft, etc". We have requested information from them but it has not yet been received. After he quit school prior to completing the 9th grade, he

000257

BAC KGR OUND INFORMATION(continued):

entered Wichita Auto Mechanics School, which he attended for a short period of time. He took the GED while at KSIR but missed passing by 2 points. Wesley's work experience has consisted of unskilled, short-term, and odd jobs for very short periods of time. He was employed at Wesley Hospital in Wichita, Kansas as a housekeeping technician from 1-6-70 to 1-13-70. He voluntarily terminated this job, as he does most jobs, by x simply not reporting for work. They indicated that they might consider him for re-employment in the future if work were available. Wesley has never been married. He would like to enter the military but his parole officer says not until his parole ends in 7-1974. His health history includes a head injury which he sustained from an auto accident in 1968, subsequent to which he was treated at St. Francis and St. Joseph Hospital in Wichita. He denies excessive use of alcohol but says that when he does drink it can become a problem. He admits to trying speed, marijuana, and hash at parties. His half-brother, Gary is presently in the county jail for robbery. He has served 1 year at KSIR for forgery, 2nd degree and attempted burglary and 1 year at KSP for burglary.

Wesley's future plans include aide training at Vocational Rehabilitation and eventually job placement in some area other than Wichita. His parole officer asks that he not be returned to Wichita, indicating that Wesley gets along better away from his mother. The parole officer related the following incident to this social worker, as an example. On Christmas Eve, 1972, patient's mother brought a bottle of whiskey to his residence. She talked him into drinking with her until he passed out. Then she went to the hospita and accused him of raping her. The police talked with Wesley, but did not pursue the charge, as the mother denied it when sober. Therefore, the parole officer, too, wishes that Wes could work in Dodge City or elsewhere after his discharge from Larned State Hospital.

KB:ccw
Dict,typed:1-10-73

Katherine Busse
Social Worker

000258

LSH-365

## SUMMARY OF HOSPITALIZATION
## LARNED STATE HOSPITAL
### Larned, Kansas

CASE SUMMARY, continued:

Page___3___

Name_____PURKEY, Wesley_____

Case No.____20,655_____Section Adult Unit #

Building_____Pinel_____

SUMMARY OF MEDICAL HISTORY:

He has had the usual childhood diseases without complication. According to the pati

he had meningitis when he was about 4 years old. He has a history of being unconsci

twice for short periods of time. Tonsillectomy. Had a high fever when he was a chi

AMINATIONAL DATA:

a. Physical & Neurological Examinations:__No pathological significant findings.__

b. Laboratory, X-ray & Special Examinations:__2hr pc blood sugar 77, BUN 7.0, Hgb. 15.4, MCHC

33.5, Hct. 43%. Urinalysis showed yellow color, hazy character, reaction 6.0, Album

Sugar and Acetone negative, WBC 10-12/hpf, bacteria occasional, occult blood negativ

Serology was non reactive. Chest xray was reported as normal chest.

c. Psychiatric Examination:__Mr. Purkey is a 20 year old white male, single, Catholic, wel

with a ninth grade education who was admitted to this hospital on a voluntary basis l

cause he was drinking and acting in a bizarre way in the community. Upon his admiss:

he was cooperative, well oriented as to time, place and person. His thought content v

centered in his problems with the law. He was somewhat depressed. He seemed to be :

dependent individual who evidenced a poor judgment and now has some difficulties in :

cepting responsibilities. He admitted to being in KSIR for two years for burglary; l

000259

C A S E   S U M M A R Y

Re: PURKEY, Wesley

Page: 4a.

PSYCHIATRIC EXAMINATION(continued):

ing responsibilities; however, he is quiet and cooperative on the ward. He is

attending his assignment regularly but he does not socialize very much with the

other patients.

000260

LSH-365

SUMMARY OF HOSPITALIZATION
LARNED STATE HOSPITAL
Larned, Kansas

CASE SUMMARY, continued:

Page __2__ __4__

Name ___PURKEY, Wesley___

Case No. __20,655__ Section __Adult Unit__

Building ___Pinel___

c. Psychiatric Examination, continued also admitted to having been in jail two times after h left KSIR on 7-18-72 for drinking problems. He was placed on the following medicati upon admission: Sinequan 25mg TID, Thorazine 100mg q6h prn for agitation, Thorazine IM prn once a day AM or PM if patient refuses his regular medication. Prior to the he was interviewed and he appeared clean in person and dress, long-haired, cooperati well oriented as to time, place and person; no distortions of perception or hallucin experiences could be elicited. His memory seemed to be preserved for all the events his intelligence seemed to be average. His thought process was logical, coherent, w relation to his hospitalization and his problems with the law. His mood was appropr to the situation. He admitted having been having several problems with the law and he admitted to being jailed twice after he left KSIR because of drinking problems. Purkey seems to be a very dependent individual, immature, with some difficulty in ac

(see attached sheet)

DIAGNOSTIC IMPRESSION:

a. Physical ___Healthy male.___

b. Psychiatric __Passive Aggressive Personality with Depressive features.__

RECOMMENDATIONS:

To be made at Staff Conference.

Pages 1 & 2
Completed by: _____
Katherine Busse
Social Worker

(Title)

Date _____

_____, M.D.

Ward Physician   Marcos Lara, M.D.

Date ___1-12-73___

ML:ccw    Dict: 1-12-73; typed: 1-29-73

4 of 4

000261

KANSAS STATE RECEPTION AND DIAGNOSTIC CENTER

Report of Psychiatric Evaluation

PURKEY, Wesley
23457
November 16, 1976

Evaluating Team:
Mario Arredondo, M.D., Psychiatrist
Mani Lee, LMSW, Social Worker
Larry Zimmerman, M.S., Psychologist

I.    Identification:

Mr. Wesley Purkey is a 24 year old, common-law married, Caucasian, common laborer with a GED from Wichita, Kansas, who was convicted by pleas of guilty of robbery and theft along with parole violation and on September 27, 1976, was sentenced in the Sedgwick County District Court to a controlling term of 1 to 20 years. He was also sentenced on September 1, 1970, in the same court to a controlling term of 10 to 20 years for burglary. Mr. Purkey was transferred from KSIR to KRDC on October 28, 1976, for the purpose of evaluation.

The sources of information used in the report include: Mr. Purkey's extensive penal records; interviews with the subject; a case report from his parole officer, Mr. Preston Miller; background information completed by his common-law wife; a transcript from Hutchinson Community Junior College.

II.    Clinical-Historical Data:

A. Offender's background

Mr. Purkey was evaluated at KRDC on May 24, 1971 and on October 10, 1974. The reports are on file and will be made available to authorized persons or agencies.

Upon completion of his evaluation at KRDC in 1974, he was transferred to KSIR where he stayed until April, 1975, working mostly in the kitchen as a butcher and baker. He was placed in the Toronto Honor Camp for about five months before he was sent back to KSIR in September, 1975, for violating the rules with drinking. He was finally paroled in December, 1975.

He worked as a cook for three days in February, 1976. He also worked at a car wash as an attendant for some weeks and other short-term labor jobs. Mr. Purkey explained that he could not hold a job because he did not know how to behave outside prison. He said, "I acted like doing time even out there. Outside jobs require entire different work habits and I didn't know what they were. And because I knew I was coming back to prison, I wanted to enjoy as much as I could."

Mr. Purkey used drugs and alcohol very heavily during the short period that he was free. He was hospitalized at the Wesley Medical Center in January 1976 for an overdose of heroin.

In February, 1976, Mr. Purkey formed a common-law relationship with a 19 year old woman who has a three year old daughter from her previous

000262

PURKEY, Wesley                          -2-              Report of Psychiatric Evaluation

relationship.  The wife stated that she would wait for his return, but Mr.
Purkey is not sure of the future of this relationship.  The wife and her child
are supported by welfare and it is questionnable if she will be a positive
resource for him.  Mr. Purkey's alcoholic mother appears to be in the same
state as before and will not be any help for Mr. Purkey.

Although Mr. Purkey claims that he has earned some academic credits
through the Hutchinson Junior College, the record shows that he withdrew from
all the courses.  Mr. Purkey, however, expresses some realistic plans for
his future that he will take some more training in welding, during his
incarceration.

### B. Offender's Version of the Present Offense

"It happened in April, 1976.  I was arrested for robbery and theft
because I was trying to do a favor for my old girlfriend.  We went to a guy
who owed her some money and asked him to give her the money back.  He and I
got into an argument and cussed at each other.  I slapped him once and he
gave her three or four dollars.  After that, we went to a bar and drank.  When
we were through with drinking, we drove somebody else's car home, because
we didn't have any transportation and we saw the car with the key in it.  I
was arrested about a month later."

### III. Psychiatric Examinational Data:

This writer has read the information available in the chart, including
previous evaluations done at our institution in 1971 and 1974.

### A. General Impression Conveyed

Few significant changes from previous evaluations are noted.  Mr.
Purkey is an alert, good looking, tall, well-developed individual with brown
hair, hazel eyes and a moustache.  When talking with him, one has the impression
of his being a detached, distant individual who speaks in a very casual manner
about his present and past offenses.  There is not the least hint of remorse
about his offense as he insists he was simply going to help a girlfriend collect
a debt and they simply took a car because they needed transportation.  This
gives the impression of a complete lack of responsibility with little
regard for either property or feelings of others.

### B. Part Processes

Intellectually he appears to be about average from the manner in
which he presents his ideas.  At no time are abnormalities in orientation,
perceptions, thought processes or reality testing noted.  His attention,
ability to concentrate and to recall are within normal limits.  He admits
auditory and visual hallucinations in the past related to his use of speed,
amphetamines but denies their presence at other times.  He acknowledges
drinking excessively and using barbiturates, heroin and other drugs.  With
no delusional ideation apparent, he is rather distrustful of others,

000263

PURKEY, Wesley I.                              -3-              Report of Psychiatric Evaluation

particularly people in positions of authority.  He seeks his immediate satisfaction with an absence of reflection prior to action.  His dreams consist of being on the streets and simply having fun.  He describes having periods of not knowing what to do.  At these times he thinks of trying to find a job or of going someplace but then finds himself using drugs the next morning.  He states he became more heavily involved with drugs after he knew he would be going to jail.

Emotionally he is calm most of the time and exhibits a consistent detachment during the interviews.  However, when emotionally laden material such as the subject of his mother is presented, he appears to be both uncomfortable and uneasy.  He has some inner anxiety but makes efforts to conceal it.  In general he does not show much feeling.  However, when he is confronted or if he perceives he is not going to receive what he wants, he instantly becomes tearful, hostile and angry.  It is apparent that he also has many underlying feelings of abandonment, loneliness and hopelessness.

C. Integrative Personality Patterns

It is apparent our inmate has many difficulties in forming relationships with others partly due to his distrustfulness and partly due to his long term fears of abandonment.  The most important person in his life seems to be his great aunt with whom he went to live for a time following his release from the reformatory in 1975.  It would appear that there are exploitative qualities to this relationship also.

He describes his relationship with his present common-law wife as being good, saying she was attempting to help him get away from the use of drugs and alcohol and to maintain a job.  However, he describes their having frequent arguments about this and states he has slapped her a couple of times.  She appears to have a desire to remain with him but he is at best ambivalent as he has difficulties in being in the position of provider.

He usually associates with people of his same antisocial tendencies.  He is both action and present oriented as he feels he has many things to catch up on, saying he has missed many good things by having to serve so much time.  He has worked very little, usually drinking, partying and using drugs as a way to forget the realities of life.

He has a noticeably low self-esteem and at the same time a sense of being victimized, being unable to see his own participation in the things he finds himself involved in.  He acknowledges occasional self-destructive ruminations, saying he has overdosed about five or six times but with no conscious thought of committing suicide.  He has no insights and motivation for making change is questionable although he will acknowledge something is wrong and he might need some help.  He would consent to receiving help from others but is not interested in active participation.  It is to be noted he has not been able to profit from previous opportunities at receiving help.

PURKEY, Wesley I.                    -4-            Report of Psychiatric Evaluation

He expects to serve some time although at other times he thinks he might receive probation. When released, he states he will have a job, marry and have a family as well as participate in drug rehabilitation. It would appear that he is unable at the present time to deal with the problems he would encounter in attempting such a life.

IV.  Recapitulation of the Evaluation Process:

In summary, this 24 year old inmate is the product of a chaotic family environment with both parents alcoholics, irresponsible and rejecting during his formative years. He has a long history of delinquency from early adolescent years with many involvements with the law and placement in different institutions but with little profit from them.

There is no sign of psychosis or defined neurotic problems. Our team concurs with his previous diagnosis of antisocial personality. He has a noted lack of concern for others, an absence of remorse, self-centeredness, repeated offenses and a hedonistic style of life. Under a facade of passivity and compliance, there is an angry, tense and hostile young man who has tremendous difficulties in adjusting to society's rules. He seems unable to cope with the daily frustrations of the common life without resorting to alcohol, drugs or illegal behavior such as in his present offense.

He appears to be in need of the structure of the correctional system (KSIR). His primary need is to gain some motivation for changing his lifestyle perhaps through counseling where he might voice his unresolved feelings toward his family as he seems to keep his negative feelings inside and then to act them out. He will require help with development of self-esteem and he needs to be made aware of his self-destructive tendencies. He could benefit from additional trainining and courses if he so desires. Prognosis is guarded in view of the longstanding nature of his difficulties.

The evaluation team concludes that the best placement for this man at the time of the evaluation would be the Kansas State Industrial Reformatory.

Karl K. Targownik, M.D., FAPA
Clinical-Director, KRDC

KKT:MA:cc

000265