# PARK DIETZ & ASSOCIATES, INC.

## Forensic Consultants in Medicine and the Behavioral Sciences

Administrative Offices
537 Newport Center Drive, #300
Newport Beach, CA 92660
Tel: 949-760-0422
Fax: 949-644-3535
Email: expert@parkdietzassociates.com
Website: www.parkdietzassociates.com

**Forensic Psychiatry**

Park Dietz, MD, MPH, PhD
 President
Eugene Beresin, MD
Bennett Blum, MD
John Bradford, MB, ChB
Andre Derdeyn, MD
Graham Glancy, MB, ChB
Bruce Harry, MD
Mark J. Hauser, MD
Victoria C. Hendrick, MD
Daryl Matthews, MD, PhD
Steven Pitt, DO
Richard T. Rada, MD
Gregory Saathoff, MD

**Forensic Pathology**

Michael Baden, MD
Tracey S. Corey, MD

**Forensic Neurology**

David Griesemer, MD

**Forensic Psychology**

Joel Dvoskin, PhD
Thomas Grisso, PhD
Stephen D. Hart, PhD
Kirk Heilbrun, PhD
Daniel A. Martell, PhD
Ronald Roesch, PhD

**Forensic Social Work**

Cheryl Regehr, PhD
Janet I. Warren, DSW

**Criminology**

Larry Ankrom, MS (FBI ret.)
Kenneth Lanning, MS (FBI ret.)
Gregg McCrary, MA (FBI ret.)
Ronald Walker, MA (FBI ret.)
James Wright, MPA (FBI ret.)
John Yarbrough (LASD ret.)

October 7, 2003

Todd Graves, Esq.
U.S. Attorney
Matt Whitworth, Esq.
Deputy U.S. Attorney
Office of the U.S. Attorney's Office
5510 Charles Evans Whittaker Courthouse
400 East 9th Street
Kansas City, Missouri 61406

Re: *U.S. v. Wesley Ira Purkey*

Dear Mr. Graves and Mr. Whitworth:

At your request, I have conducted an evaluation of Wesley Purkey with respect to his mental state at the time of his crimes against Jennifer Long and with respect to certain mitigating factors set forth by statute for consideration at the time of capital sentencing should he be convicted.

I conclude on the basis of the data set forth below that Mr. Purkey did not suffer from any mental disease or defect at the time of his crimes against Jennifer Long that could form a legitimate basis for a defense of insanity or diminished capacity. With respect to statutory mitigating factors, I also conclude that for purposes of sentencing mitigation, the defendant has made statements that, if believed, indicate the presence of voluntary intoxication with alcohol and crack cocaine at the time of these crimes and a history of physical and sexual abuse in his childhood.

## DATA AVAILABLE FOR EVALUATION

In keeping with our usual practice, the records listed below as Items 1-73 were reviewed and summarized by Larry G. Ankrom, M.S. (F.B.I., ret.), working under my supervision and direction. One of those documents is a transcript of my recorded examination of Mr. Purkey.

000994

Examination

I personally examined the defendant on September 15-16, 2003, at the Federal Penitentiary in Fort Leavenworth, Kansas. The examination was recorded on audiotape and videotape, as is my practice. Mr. Purkey was informed at the outset of my identity, the fact that your office had retained me, the purpose of the evaluation, and the lack of confidentiality. He appeared to understand these warnings. Mr. Purkey was offered coffee, food at meal time, breaks when he wished, and the opportunity to consult defense counsel. Defense counsel was nearby and available to Mr. Purkey throughout the days I examined him.

Records Reviewed

Records reviewed for purposes of this evaluation were:

[1] Kansas State Reception and Diagnostic Center Report May 5, 1971;

[2] Autobiography written by Wesley Purkey, May 3, 1994;

[3] St. Francis Hospital, Wichita, Kansas medical records;

[4] Kansas State Reception and Diagnostic Center report, May 11, 1971;

[5] Letter from Paul G. Murphy, Ph. D., Clinical Psychologist, January 24, 1972;

[6] Special Progress Report, Kansas State Industrial Reformatory, April 10, 1972;

[7] Special Progress Report, Kansas State Industrial Reformatory, June 12, 1972;

[8] Kansa State Reception and Diagnostic Center report, September 26, 1974;

[9] Kansas State Reception and Diagnostic Center Psychiatric Examination Report, October 16, 1974;

[10] Kansas State Industrial Reformatory Psychological Summary, November 25, 1975;

2

000995

[11] Kansas State Reception and Diagnostic Center Report of Psychiatric Evaluation, November 16, 1976;

[12] Kansas State Penitentiary Medical Report, January 13, 1979;

[13] Kansas State Penitentiary Medical Report, January 22, 1979;

[14] Kansas State Penitentiary Medical Report, March 29, 1979;

[15] Kansas State Penitentiary Medical Report, May 3, 1979;

[16] Kansas State Penitentiary Psychiatric Consultation Report May 19, 1979;

[17] Kansas State Penitentiary Psychiatric Consultation Report, June 10, 1979;

[18] Kansas State Penitentiary Psychiatric Consultation Report, June 22, 1979;

[19] Kansas State Penitentiary Psychiatric Consultation Report, July 14, 1979;

[20] Kansas State Penitentiary Psychiatric Consultation Report, August 4, 1979;

[21] Sedgwick County Department of Mental Health Psychiatric Evaluation Report, September 24, 1980;

[22] Kansas State Reception and Diagnostic Center Report of Clinical Evaluation, May 15, 1981;

[23] Kansas State Reception and Diagnostic Center Report of Psychological Evaluation, May 19, 1981;

[24] Oregon State Hospital Correctional Institution Treatment Services Assessment Summary, December 30, 1986;

[25] Internal Oregon State Hospital note, December 7, 1987;

[26] Oregon State Hospital Correctional Institution Treatment Services Admissions/Termination Form, March 7, 1988;

000996

[27] Letter from Thomas L. Lester, Unit Director, Correctional Institution Treatment Services, April 27, 1989;

[28] Clinical Services Report, Mental Health Services, March 18, 1992;

[29] Kansas Department of Corrections, Mental Health Services records;

[30] Clinical Services Report, Lansing Correctional Facility, Mental Health Services, July 20, 1994;

[31] Kansas Department of Corrections, Interdepartmental Memorandum, October 3, 1996;

[32] VIA Christi Regional Medical Center, Wichita, Kansas medical records, May 2, 1998;

[33] Larned State Security Hospital Forensic Evaluation Report, March 16, 1999;

[34] Kansas Department of Corrections, Evaluation and Classification Report, May 18, 2000;

[35] Stephen E. Peterson, M.D., letter to Frederick A. Duchardt, Jr., January 15, 2002;

[36] Fred Duchardt Memorandum to Roger Moore, January 24, 2002;

[37] U.S. Medical Center for Federal Prisoners Forensic Report, March 21, 2002;

[38] Federal Medical Center, Rochester, Minnesota Forensic Evaluation Report, August 13, 2002;

[39] Psychological Assessment prepared by Bruce A. Leeson, Ph.D., January 5, 2003;

[40] Diagnostic Interview Report, Stephen E. Peterson, M.D., August 13, 2003;

[41] Kansas State Reception and Diagnostic Center medical records;

[42] Kansas State Industrial Reformatory medical records;

000997

[43] Kansas State Department of Corrections medical records;

[44] Kansas State Penitentiary medical records;

[45] Wesley Medical Center medical records;
[46] Dr. Brian W. Joseph letter to Mr. Purkey, June 15, 1978;

[47] Iowa State Penitentiary medical records;

[48] Oregon State Correctional medical records;

[49] University of Kansas Hospital medical records;

[50] Providence Medical Center, Kansas City, Kansas medical report, September 16, 1998;

[51] Affidavit for Application For Warrant, October 29, 1998;

[52] Kansas City Kansas Police Department investigative records;

[53] Wesley Purkey interview transcript with police investigators, October 31, 1998;

[54] Article, *Kansas City Star*, Pages 1-2, October 11, 2001;

[55] Note from Wesley Purkey to Detective Howard, December 16, 1998;

[56] FBI, FD-302 Interview Report, December 16, 1998;

[57] FBI, FD-302 Interview Report, December 17, 1998;

[58] FBI, FD-302 Interview Report, January 5, 1999;

[59] FBI, FD-302 Interview Report, December 16, 1998;

[60] FBI, FD-302 Interview Report, December 17, 1998;

[61] FBI, FD-302 Interview Report, January 15, 1999;

[62] Article, *Wichita Eagle*, Page 1, October 11, 2001;

[63] FBI Fingerprint arrest record regarding Wesley Ira Purkey;

000998

[64] Kansas State Department of Corrections records;

[65] District Court of Sedgwick County, Kansas transcript, March 9, 1981;

[66] Article, *The Kansas City Star*, Metro Section C, Page 1, October 31, 1998;

[67] Interview transcript of Claire Purkey, October 29, 1982;

[68] Kansas City Kansas Police Department Investigation Report, October 29, 1998;

[69] Admission Summary Report, January 6, 1983;

[70] Interview transcript of Tammie Sue Sanders, October 29, 1998;

[71] Oregon State Penitentiary correctional records;

[72] Transcript of examination of Wesley Purkey by the undersigned, September 15-16, 2003 [cited as Dietz Exam];

[73] Arizona Department of Correction records, June 8, 1982;

[74] Tape recorded phone call from Wesley Purkey at CCA Federal Holding Facility to Jeanette Purkey, 1/28/02 or 1/29/02 regarding postponed wedding;

[75] Photographs of crime scenes (both homicides), victims, and defendant's tattoos;

[76] Statement of Gary Lee Hatfield re. alleged sodomy by Wes Purkey, at forest camp, Tillamook, Oregon, on 10/31/87;

[77] Deposition of Jeanette L. Purky in State of *Kansas v. Wesley Purkey*, 12/27/99 (provided by Frederick A. Duchardt, Jr., Esq.);

[78] Report of interview of Jeannette Purkey on 10/22/02 by Mic Armstrong (provided by Frederick A. Duchardt, Jr., Esq.); and

[79] Affidavit of Jeannette Purkey, 11/28/02, and exhibit re. JT Eaton mouse poison (provided by Frederick A. Duchardt, Jr., Esq.).

## PERSONAL HISTORY

### Family History

Wesley Ira Purkey, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, was the only child conceived during the union of Jack and Velma Purkey. Jack and Velma Purkey first married in 1943 but separated after one month and subsequently divorced. Velma Purkey married Milo Hamilton in 1944 and they conceived a son, Gary Hamilton, on May 20, 1948. Velma Hamilton divorced her husband in 1951 and married Jack Purkey for the second time in 1951. Jack Purkey adopted Gary Purkey as his son. The couple divorced a second time in 1962 when the defendant was age 10 [1, p. 530].

The defendant's maternal grandmother reported that after the divorce, the defendant's mother became neglectful of the two children. The grandmother stated "All she thought about was alcohol and men. There was always drinking and fighting in their home. She would leave for five or six days at a time." Purkey's mother admitted to "dating a great deal," and left the children in the care of their maternal great aunt, Mrs. Carrie Burke. According to the defendant's mother, Mrs. Burke lived with them for several years and had always taken care of the children while she worked [1, p. 2].

Mrs. Burke reported that the defendant's parents were heavy drinkers. She further stated shortly after the divorce, Velma Purkey became "openly promiscuous and often brought her male friends into the home for sexual relations." When Mr. Purkey was approximately 14, the court appointed Mrs. Burke as his legal guardian [1, p. 2].

The defendant described his childhood as "turbulent, tore apart by alcohol and literally dysfunctional." He said his dad abused his mother which was witnessed by him and his brother. According to Mr. Purkey, his mother and father drank heavily and "such showed heavily in their behavior." He stated, "My Dad never could communicate with us kids beyond do this or don't do that. We had our asses beat regularly, but after awhile it did not bother us very much, as we simply took it as being part of life." Mr. Purkey claimed that he would, "get beat with a belt, get beat with my dad's bare hands, slapped by my mom" [Dietz exam, p. 49]. Purkey stated that his father "never once talked with me, never gave any advice, guidance, or shared any part of his life" [2, pp. 2552-2553].

Mr. Purkey described his father as:

**001000**

WP_PC000090932

Stoic. Just blank. Unfeeling, didn't care, drunk, had no inner relations with his kids or with me. Uh, I don't think he so much as cruel as what he was just, just a bastard, you know? He, like the old saying goes, "Be seen but not heard." And if you didn't do what he wanted you to do or if you did something that he changed the rules on that one day to the next day you got your ass beat. I don't ever remember getting a hug from him or a kiss or I don't remember him saying "I love you" or "You did good," you know or, there's always a reverse side of the coin that said, "You need to learn to talk right or just shut the fuck up when we have people over here." "You ain't going to amount to shit." I don't ever remember having a conversation with him. Never. [Dietz exam, pp. 28-29.]

Mr. Purkey stated his mother punished him for having a stuttering problem. She would "always silence me when any of her friends were over at the house by merely placing her finger to her lips." He recounted a couple of times when she threw "drinks on me for not being able to get my words out" [2, p. 2552]. During Thanksgiving at age 9, because of his speech impediment when asking for the mashed potatoes, Purkey claimed his father threw a bowl full of jelly in his face [33, p. 1197].

Mrs. Burke described Mr. Purkey's childhood development as "within normal limits." She advised he began stuttering at a very early age for which he received speech therapy at the Institute of Logopedics in Wichita, Kansas. Mrs. Burke advised that the defendant developed polio at an early age that affected the use of one leg. Otherwise, the defendant was said to have experienced the "usual childhood diseases" without complications [1, p. 3].

Purkey advised that his father worked for Boeing until he committed suicide when Mr. Purkey was approximately age 22. He learned of his father's suicide from a note delivered by "a stranger while he was incarcerated in the Lansing State Prison." He stated his mother worked for Boeing and also as a waitress until her death from pancreatic cancer when he was approximately age 24 [37, pp. 3 and 4].

Mr. Purkey reported a history of sexual abuse in childhood. He told evaluators that his mother sexually him from age 8 until early childhood [38, p. 2]. At the age of eight or nine, Mr. Purkey said his

001001

mom would wear a "see through baby doll thing and a pair of panties playing cards." According to Mr. Purkey,

> Next thing I know we'd end up in bed together she'd ask me to put lotion on her or brush her with a brush or stimulate her with the brush, do things of that magnitude. [Dietz exam, p. 40.]

When asked to explain what he meant by stimulate his mother, Mr. Purkey said he would place the handle of the brush inside his mother's vagina. He also stated that he orally copulated his mother. At age 10 or 11, Mr. Purkey said his mother would arouse him. He claimed to have had intercourse with his mother. He also said she orally copulated him. According to Mr. Purkey the sexual interaction with his mother continued until he was about 15. Mr. Purkey gave two reasons why the sexual abuse by his mother stopped. He said "I got tired of it," and his aunt became his guardian. Mr. Purkey stated that his aunt knew what was going on and told a doctor at St. Francis Hospital about the situation. However, Mr. Purkey said he denied it to the doctor [Dietz exam, pp. 40-43].

When asked to describe his feelings during the time of his mother's sexual abuse, Mr. Purkey said he was "scared, ashamed, didn't know what to do. She told me not to worry about it. She would never mention it when she was really sober." Through court records he saw in recent years, the defendant claimed to have learned of his mother's molestation by his grandfather. The first person Mr. Purkey told of his mother's actions was his second wife, Jeanette [Dietz exam, pp. 44-46].

Records indicated Mr. Purkey's mother accused him of raping her when he was 20 but reportedly later recanted [38, p. 2].

Mr. Purkey described incidents with his father involving prostitutes. He said anywhere from four to six times, at age 11 or 12, his father would pick up prostitutes while the defendant was with him. While in his father's vehicle, Mr. Purkey said prostitutes purchased by his father orally copulated both his father and him [Dietz exam, pp. 50-53].

<u>Marital History</u>

At age 27, Mr. Purkey entered into a common law marriage with Claire Purkey. They divorced in 1982 when he returned to prison following a violation of his parole. One daughter, Angie, was produced from this

001002