Dr. Jehan noted in his report that Mr. Purkey was admitted to E.B. Allen Memorial Hospital on an emergency petition because of irrational behavior while under the influence of drugs and alcohol. He wrote, "this is apparently the only psychiatric hospitalization" [21, p. 4118].

During his evaluation, Mr. Purkey was administered the MMPI, Prison Classification Inventory, Draw-A-Person Test, Competency Screening Test, and Incomplete Sentences Blank for psychological testing. Dr. Jehan stated the results suggest "a feeling of desperation in a basically sociopathic personality." The test results further indicated no evidence of psychosis, but anger with authority figures and potential explosiveness [21, p. 4118].

Dr. Jehan interviewed Mr. Purkey and recorded that he was alert, expressed a great deal of hostility toward authority figures, continued to blame others for his problems, and had no guilt about his criminal activities. Mr. Purkey claimed that he is severely handicapped by his emotional problems, but Dr. Jehan noted he "tries to use this as a defense for his antisocial behavior." According to Dr. Jehan's report, Mr. Purkey became quite emotional several times during the interview; however, there was no evidence of any depression. There was no indication of any hallucination, although "Mr. Purkey claims to be seeing people that are not there" [21, p. 4119].

Dr. Jehan concluded from psychological testing and psychiatric examination that Mr. Purkey is "not suffering from any psychosis at this time." He described Mr. Purkey as "an antisocial type of personality and is unlikely to respond to any psychiatric treatment." He found the defendant capable of understanding the proceedings against him and capable of assisting in his own defense [21, p. 4119].

Dr. Karl K. Targownik prepared a May 15, 1981, report of a clinical evaluation of Mr. Purkey. The report encompassed a May 5, 1981, interview of Mr. Purkey, evaluation summaries from KSRDC dated May 24, 1971, October 10, 1974, and November 16, 1976, presentence report from Sedgwick County District Court, April 14, 1981, Wichita Police Department Report, August 6, 1980, and a complete review of Mr. Purkey's institutional folder [22, p. 3998].

Dr. Targownik referenced a December 29, 1966, diagnostic work-up of Mr. Purkey at the St. Francis Hospital. At that time his physical and neurological examinations were reportedly within the normal range, and the psychological evaluation reported that "Mr. Purkey was experiencing a serious personality disorder centered on psychosexual

001015

problems of identification." A copy of this evaluation was not included in the records received. They recommended institutional care and treatment at the Boys Industrial School; however this recommendation was not carried out. Instead, according to Dr. Targownik's report, Mr. Purkey began outpatient psychotherapy with Dr. F.C. Newsom in Wichita, Kansas, for an unspecified period of time. According to the defendant's guardian, he subsequently continued psychotherapy treatment with Paul G. Murphy, Ph.D, until his arrest in 1970 [22, p. 3999].

Dr. Targownik's impression upon interviewing Mr. Purkey was that he was friendly but apprehensive. Mr. Purkey recounted his version of the then-recent offense [22, p. 4002]:

> I think that it was just something that came up. It wasn't planned. Of the kidnapping, I didn't know that it had happened. I didn't have any illustration of doing any harm to the man. But when we were in the woods I did shoot him; didn't kill him though; that's how loaded I was. But as to what led to it I don't know. Never seen the man before. It was a senseless stupid crime; there wasn't hardly any gain to it; I think I was shooting myself at the same time that I was shooting the man. I had been out of Lansing for a couple of weeks; I was broke; I jumped my parole; so my parole officer wouldn't help me; I didn't want to go back to Lansing . . .

Dr. Targownik found Mr. Purkey alert and oriented with unimpaired attention, concentration, and memory. Purkey's thoughts dealt mostly with his realization of the "evil of his behavior . . . and his need to change and his resolution to do so." Dr. Targownik characterized the defendant's judgment as aimed at immediate satisfaction of his needs with an inability to learn from past experiences and the handling of his everyday affairs without common sense. Mr. Purkey gave Dr. Targownik no indication of feeling any guilt, shame, depression or anger [22, p. 4002].

Dr. Targownik reported very little change from previous evaluations. He noted that Mr. Purkey is "quite manipulative and in need to appease the interviewer for secondary gains." Dr. Targownik wrote that "the nature and severity of his present offense leads one to think in fact that his crimes and his adherence to violence are getting worse and that he has proven certainly to be a risk to society" [22, p. 4003].

001016

John Thomas, Psychologist, KSRDC, reported his evaluation of Mr. Purkey, May 19, 1981. Thomas noted Mr. Purkey's difficulty in expressing himself verbally and occasional stammering. Mr. Purkey told Thomas that after his parole in July of 1980, he was out approximately three weeks before his apprehension by police. Immediately after his parole, Mr. Purkey said he "started heavy polydrug use again" and this seemed to play a role in his returning to prison [23, p. 3997].

Psychological testing administered by Thomas reportedly found Mr. Purkey functioning within the "Average range of intelligence with vocabulary and conceptional problem solving skills within the same range." His reading and math abilities were assessed at the twelfth and tenth grade levels respectively. He was given the MMPI, and his profile suggested:

> He may be an individual who is highly rebellious and non-conforming as well as unreliable. He may harbor shallow feelings and loyalties to those around him while maintaining poor family and social relationships. Such an individual may be moody and resentful and liable to make a good impression at first and sometimes give evidence of great insight. A non internalization of recognized social conventions may be another dynamic of such an individual. He may tend to be touchy and overly responsive to the opinions of others. Excessive use of alcohol and drugs may be associated with Mr. Purkey as well as defects in judgment. [23, p. 3997.]

Irwin Smalheiser, Ph.D., interviewed Mr. Purkey on December 7, 1982. Dr. Smalheiser reported that Mr. Purkey gave the impression of being anxious to make a good adjustment to the Kansas State Industrial Reformatory. Dr. Smalheiser had not received any records from Kansas regarding Mr. Purkey [42, p. 503].

Rex M. Newton, Ph.D., Oregon State Hospital, conducted an assessment of Mr. Purkey on December 30, 1986. Mr. Purkey reportedly sought assistance "to adjust his thinking and attitude closer to free community." Apparently, Mr. Purkey's release date was anticipated within the next three of four years. The defendant described his prior alcohol and drug problems. Dr. Newton noted Mr. Purkey's experimentation with drugs at age 14 and an addiction to heroin by age 19. Mr. Purkey told Dr. Newton about his alcohol abuse,

saying "I drank to blackout things."  Mr. Purkey gave his primary drug of choice as heroin [24, p. 921].

Dr. Newton reported that Mr. Purkey was oriented, had intact short and long term memory, was of average intelligence, had adequate social skills, and a "stutter problem with his speech."  Purkey reported twelve consecutive years of incarceration in Kansas.  Dr. Newton stated that the defendant was transferred to Oregon "to break-up a racial clique he was involved with (Aryan Brotherhood)."  Dr. Newton's report noted "he has a history of drug addiction and out of control behavior . . . states he (Purkey) would get loaded so I wouldn't have to think about things" [24, p. 919].  Dr. Newton recommended CITS (Correctional Institution Treatment Services), counseling, and CITS criminal thinking class at some future date [24, p. 918].

Dr. Newton prepared a summary note of his meeting with Mr. Purkey on December 7, 1987.  Dr. Newton described the defendant as a very angry, frustrated, confused, and scared individual.  He was "angry with me for not getting him into CITS counseling (med) last summer like I told him I would do."  Dr. Newton acknowledged in his note, "I think Purkey did fall through the CITS cracks – he was going to start seeing Steve Moe, but Steve left" [25, p. 917].

Dr. Newton completed an admission data form on March 7, 1988, regarding Mr. Purkey for mental/emotional disturbance and recommended group CITS counseling.  Dr. Newton identified Purkey's three problems areas as criminal personality, institutionalization, and community support system.  Dr. Newton recorded Mr. Purkey's attendance at three groups before he decided to discontinue.  He stated that Mr. Purkey went to Forrest Camp and hoped to eventually go the Cornerstone.  Mr. Purkey's desire to not participate any further in "anything CITS has to offer at this time" was noted by Dr. Newton.  Purkey was discharged from CITS on December 19, 1988.  Mr. Purkey attended two group counseling sessions and two individual sessions [26, pp. 923-928].

Thomas L. Lester, Unit Director, CITS, authored a letter to John Caywood, Oregon State Penitentiary, April 27, 1989.  The letter documented Mr. Purkey's counseling contacts with Dr. Newton and noted that Mr. Purkey did not show for group callouts on "4/4/88, 4/11/88, and 4/18/88, and was dropped from the group callout list on 5/2/88" [27, p. 1152].

001018

John Dunn, M.A., filed an evaluation summary of Mr. Purkey on March 18, 1992. He reported the results of MMPI testing:

> Show a profile of a person who appears to be very low in anxiety, and has good ego strength. The inmate also shows himself, according to the K scale, to be in a defensive posture. The profile also points out a very high elevation on a psychopathic deviate scale. The high elevation may suggest the classical picture of the psychopath. Poor social judgment, inability to profit from experiences, anti-social behavior, and significant conflict with authority figures may be indicated. However, because this individual is college educated, and appears to have some intellectual ability, the more malignant aspects of this description may be modified. [28, p. 2373.]

Mr. Dunn reported that Mr. Purkey paints an ambiguous picture. On the one hand, "his intellectual ability and his level of education can mitigate his antisocial tendencies." On the other hand, "he recently accrued two disciplinary reports for aggressive and rebellious conduct" [28, p. 2376].

Mr. Purkey completed 30 hours of mental health counseling between November 1, 1993, and December 9, 1993 [29, p. 2562]. He completed a variety of exercises such as answering seventeen questions related to his growing up, ranking his human needs, addressing questions related to basic human needs, and discussing his "big life issues" [29, pp. 2567, 2569-2574]. The counseling focused on deviant behavioral cycles and their underlying dynamics. Basic decision making, anger, and impulse control were given special focus. Mr. Purkey's prognosis was noted as poor-fair. Although he already had a long history of crime, he was noted to be making strides towards the positive [29, p. 2564].

Elizabeth Dufek, M.S., met with Mr. Purkey on April 26, 1994, to discuss his options in initiating the "CSR" process. His posture was described as tense, he was labored in his breathing, he stuttered, and he initially displayed a tone of anger in his voice. Dufek noted that Mr. Purkey "feels persecuted due to his achievements and the disregard to these achievements by the system." She wrote that Purkey would attend group counseling May 3 to June 2 [29, 2555].

Mr. Purkey received a certificate recognizing the successful completion of 30 hours of counseling from the Kansas Department of Corrections,

004019

Mental Health Services.  Communication and coping skills were the focus of the treatment.  Elizabeth Dufek noted Purkey's prognosis was positive.  She recorded his "exceptional work in the area on controlling his behavior" [29, p. 2545].

Czeslaw Doktor, M.A., completed an evaluation of Mr. Purkey that included a clinical interview, review of records, and psychological testing.  Doktor considered the list of institutional achievements by Purkey as impressive.  The completion of several vocational programs included obtaining skills in welding and plumbing.  Doktor reported Purkey's receipt of an Associate of Art degree in Literature from Hutchinson Community College in 1989, and the completion of the treatment programs ADAPT (July 1991) and Mental Health (twice: December 1993 and June 1994) [30, pp. 2368 and 2370].

Doktor reported finding no present symptoms of psychosis or significant personality disorders.  Tests, which included the MMPI, Millon Clinical Multiaxial Inventory (MCMI), Shipley Institute of Living Scale, and Trail Making Test, did not indicate organic brain dysfunction.  Test results placed him in the average range of intelligence with better results obtained in verbal scales.  The MMPI presented Mr. Purkey as "amoral, hedonistic, egocentric, bright, and manipulative."  His relationship with others was reported as superficial and based on anger.  The MMPI further indicated the presence of a low level of acceptance of others' autonomy and authority.  Other characteristics included impulsiveness and sensation-seeking which leads to frequent conflicts with norms and rules [30, pp. 2368, 2370, 2371].

MCMI results indicated a narcissistic component, which was described as an inflated ego, unrealistically high self-esteem and taking preference "for his own needs and wants over others."  Doktor reported that both the MMPI and MCMI indicated a tendency for substance abuse and addictions.  Doktor stated Mr. Purkey's personality is "integrated and mature although indicators of antisocial behavior are strongly present."  Doktor reported that Mr. Purkey did not present symptoms of a major psychiatric process, nor suicidal tendencies.  According to Doktor, "his test results indicate strong traits of antisocial personality, which are outweighed by his maturity and integrity of his personality" [30, p. 2371].

Heather Kirchhefer, RMLP, authored a memorandum, October 3, 1996, on behalf of Mr. Purkey and the Custody Review Hearing.  She reported Purkey's progress in individual mental health sessions

001020