quit the group saying "our group wasn't a lifer's only group" [29, p. 2335 and 2332].

Purkey had a 30-minute counseling session on August 18, 2001, and "appeared to want to discuss his knowledge and/or involvement with this other murder case but knew I would be legally bound to report any information he gave me so he talked around it." It was reported that Purkey said, "I'm not going to say that I am not sorry for this woman (victim's mother). No one should have to go through something like this" [29, p. 2330].

Recent Forensic Evaluations

Stephen E. Peterson, M.D., authored a letter to Purkey's attorney Frederick A. Duchardt, Jr., on January 15, 2002. Dr. Peterson referenced his April 19, 2000, Diagnostic Interview Report, which diagnosed Mr. Purkey with [35, p. 3623]

> Cocaine Induced Psychotic Disorder with Delusions, Early Onset Dysthymic Disorder, Polysubstance Dependence (psychostimulants, alcohol, and hallucinogens), Personality Disorder Not Otherwise Specified (with antisocial, obsessive-compulsive, and paranoid features), reported history of closed-head injury during high school with subsequent headaches and blurred vision, amphetamine induced seizure during 1988, history of intravenous drug use since age 16 (32-year duration), and history of drug induced anxiety attacks.

Dr. Peterson again referenced his April 19, 2000, report wherein he discussed Mr. Purkey "felt relief from anger control problems through a combination of Tegretol and Valium." He described benefits from treatment with Tegretol, Depakote, and Lithium. Dr. Peterson suggested Mr. Purkey may receive some benefit from a "combination of Tegretol and Valium or one of the three mood stabilizers mentioned and BuSpar" [35, pp. 3623-3624].

Attorney Fred Duchardt faxed a memorandum to Roger Moore on January 24, 2002, requesting "that medical treatment of Mr. Purkey at CCA be modified to include use of Tegretol and Valium to treat Mr. Purkey's psychiatric conditions" [36, p. 3626].

Christina A. Pietz, Ph.D., evaluated Mr. Purkey at Springfield in connection with charges of Kidnapping, Rape, and Murder in United

001027

States District Court for the Western District of Missouri, Western Division.  The referring Court requested an opinion regarding Mr. Purkey's competency to proceed from the United States Medical Center for Federal Prisoners located in Springfield, Missouri.  The evaluation was conducted in the Mental Health Evaluation Unit from February 25, 2002, to March 21, 2002.  Mr. Purkey was regularly observed by both clinical and correctional staff during this period.  Purkey's evaluation included clinical interviews, review of his medical history, a physical examination, and reports of interviews and other records from the Assistant United States Attorney.  Mr. Purkey refused to participate in any psychological testing [37, pp. 1 and 2].

During his mental health evaluation, Mr. Purkey advised that he was never referred to substance abuse treatment, but did complete a 12-week drug program while incarcerated in Lansing, Kansas.  The defendant claimed to have attended Alcoholics Anonymous after his release in 1997.  When describing his varied drug usage, he claimed he "sniffed glue on a regular basis."  Mr. Purkey stated that throughout his incarceration in the Kansas Department of Corrections, he was never placed in a mental health facility.  Christina A. Pietz, Ph.D., A.B.P.P., wrote in her March 21, 2002, evaluation report, "My review of the available records from the Kansas Department of Corrections confirmed this" [37, p. 5].

According to Dr. Pietz, Mr. Purkey followed the rules and regulations of the institution during the evaluation period.  Throughout his hospitalization, his behavior was "consistently organized and appropriately goal-oriented.  No bizarre, threatening, or assaultive behaviors were observed" [37, p. 6].

Mr. Purkey's physical examination was unremarkable.  He complained of dry skin and an enlarged toe nail (left great toe).  The dental staff did an examination and noted he needed a cleaning of his teeth and some dental work.  According to Dr. Pietz, Mr. Purkey complained of lower back pain at the end of the evaluation but did not mention any pain during his physical.  He was prescribed 550 mg of Naprosin to be taken twice a day, 15 mg of BuSpar to be taken three times a day, and 200 mg of Tegretol to be taken twice a day [37, pp. 6 and 7].

Dr. Pietz noted that Mr. Purkey's thoughts on mental status examination contained no delusional, suicidal or homicidal ideation or intent.  She stated his affect, "was generally bland, it varied appropriately with his mood" [37, p. 7].  Dr. Pietz reported that Mr. Purkey "did not appear to meet criteria for a major mental illness."

35

001028

She said he appeared to exhibit antisocial personality traits and "probably would have met a diagnosis of childhood conduct disorder because of his irresponsible behavior and participation in juvenile delinquent activities during adolescence." She opined Mr. Purkey met the criteria for antisocial personality disorder.

Dr. Pietz reported her diagnosis of Mr. Purkey as:

| | |
|---|---|
| Axis I: | Polysubstance Dependence |
| Axis II: | Antisocial personality disorder |
| Axis III: | Noncontributory  [37, p. 8.] |

<u>Christine Scronce, Ph.D.</u>, Director of Forensics, evaluated Mr. Purkey at the Federal Medical Center, Rochester, Minnesota, and issued a report on August 13, 2002. The Western District of Missouri had requested an opinion regarding Mr. Purkey's competency to stand trial. During his stay at the facility, Mr. Purkey was routinely observed on his ward of residence by both clinical and correctional staff. He received a physical examination and laboratory studies on admission. He was interviewed by Dr. Sconce and was administered the MMPI-2 [38, pp. 1 and 2].

When Dr. Scronce reviewed prior Kansas Reception Diagnostic Center evaluations of Mr. Purkey in 1971, 1974, and 1976, she noted each referenced his antisocial personality pattern and substance abuse problems. Dr. Scronce reported that for the most part, "the classification reports indicated Mr. Purkey displayed no psychological problems during his lengthy incarceration periods." After reportedly cutting himself twice in 1979, Dr. Scronce stated he was prescribed antianxiety and antidepressant medications (Valium and Sinequan). Dr. Scronce stated the only significant mental health symptoms experienced by the defendant have been related to his extensive drug use. As an example, Dr. Scronce noted an incident after the defendant crushed Ritalin to use intravenously; he voiced beliefs that his wife and her sons were trying to kill him by spraying him with some sort of insecticide [38, p. 4].

Dr. Scronce referenced an April 2000 evaluation conducted by Dr. Stephen E. Peterson and noted Dr. Peterson stated that the defendant's psychotic symptoms had resolved after he was deprived of drugs during incarceration. In December of 2000, Mr. Purkey complained of another inmate "spraying chemicals in his cell," and in January 2001 he was prescribed Haldol for one week and the

36

antidepressant medication imipramine.  Dr. Scronce reported his paranoia dissipated once he was placed in segregation [38, p. 5].

Upon Mr. Purkey's arrival on May 16, 2002, he denied any depressed mood, psychotic symptoms, suicidal ideation, or homicidal ideation. He did not express any delusional ideation nor gross cognitive or memory deficits.  At Mr. Purkey's request, he was continued on the anti-anxiety medication BuSpar, 15 mg three times per day, and the mood-stabilizing medication Tegretol, 200 mg three times per day. Dr. Scronce stated Mr. Purkey's "behavior was otherwise unremarkable" [38, p. 6].

During his first interview with Dr. Scronce, he reportedly was angry and complained bitterly about the conditions of his confinement.  He told Dr. Scronce that if his wife's visit were not granted, "We're done." Once this problem was resolved, the defendant continued the interview.  Mr. Purkey denied auditory or visual hallucinations.  He admitted to "serious anger problems" as far back as his childhood years.  He also admitted to Dr. Scronce experiencing psychotic symptoms during heavy drug usage [38, p. 7].

Mr. Purkey was administered the MMPI-2 and the resulting profile was reported as valid.  Dr. Scronce said the clinical scales revealed "a pattern consistent with severe, chronic maladjustment."  She noted that the profile did not suggest the presence of bizarre ideation or unusual perceptual experiences associated with psychotic disorders such as Schizophrenia [38, p. 7].

Dr. Scronce reported that Mr. Purkey's history and presentation "clearly indicated he has a severe personality disorder."  She agreed with previous evaluators in saying he "meets the diagnostic criteria for Antisocial Personality Disorder."  The diagnosis was supported by Mr. Purkey's early history of conduct disorder, extensive criminal history, irritability and aggressiveness, consistent irresponsibility, and a lack of remorse.  Dr. Scronce opined that Mr. Purkey's hostility and angry outbursts are associated with a maladaptive personality style rather than a mood disorder.  She said his mood symptoms were more attributable to "situational factors combined with the irritability and dysphoria commonly associated with Antisocial Personality Disorder" [38, p. 8].

Dr. Scronce reported Mr. Purkey's chronic and severe substance dependence problems.  She referenced Mr. Purkey's psychotic symptoms many months after his incarceration, in December 2000

001030

and January 2001, reporting beliefs about being poisoned by chemicals. Dr. Scronce noted the similarity with ideas described when he was using stimulants heavily. Dr. Scronce stated many possibilities could explain Mr. Purkey's reports of poisoning, including the use of illicit stimulants during his incarceration. She noted that it "does not appear that a drug screening was conducted when he began reporting such symptoms during his incarceration. Dr. Scronce reported that Mr. Purkey did not demonstrate active symptoms of psychosis during her evaluation [38, p. 9].

Dr. Scronce's diagnostic impression was:

| | |
|---|---|
| Axis I: | Polysubstance Dependence, In Remission in a Controlled Environment |
| Axis II: | Antisocial Personality Disorder |
| Axis III: | None noted  [38, p. 9.] |

Dr. Scronce reiterated that Mr. Purkey's anger and irritability are part of a longstanding and maladaptive personality style rather than a mental illness. She reported finding no evidence to indicate Mr. Purkey's ability to understand the proceedings or participate in his defense was "hampered by any current symptoms of a major mental disorder" [38, p. 10].

Bruce A. Leeson, Ph.D., prepared an evaluation of Mr. Purkey's neuropsychological functioning at the request of his attorney, Fred Duchardt, Jr. The psychological assessment was dated January 5, 2003. Dr. Leeson reviewed selective medical records, defendant evaluations, and criminal records. He met with Mr. Purkey at Leavenworth Detention Facility, Leavenworth, Kansas on April 22, 2002, and administered the Wechsler Adult Intelligence Scale, Wechsler Memory Scale, Test of Variables of Attention, Delis-Kaplan Executive Function System and the Personality Assessment Inventory. Dr. Leeson interviewed Mr. Purkey and administered the Test of Memory Malingering on April 23, 2002. On December 9, 2002, he interviewed and administered the Smell Identification Test to Mr. Purkey [39, pp. 1 and 2].

Dr. Leeson highlighted in his report four incidents between 1968 and 1976 involving Mr. Purkey that resulted in head injuries. He reported Mr. Purkey's admission to St. Joseph's Hospital and Rehabilitation Center in Wichita, Kansas, on March 8, 1968. Following a vehicle accident, Mr. Purkey received multiple lacerations of the left face, anterior neck, and shoulder. Physicians diagnosed Mr. Purkey with a

cerebral concussion resulting in a week-long stay in intensive care. Dr. Leeson reported Mr. Purkey advised he suffered from headaches, dizziness, and blurred vision for months afterwards [39, p. 2].

Dr. Leeson noted the defendant's treatment at the emergency room of St. Joseph's Hospital on April 29, 1968, for multiple facial abrasions and contusions following another vehicular accident. X-rays were negative for spinal or skull fractures with no indication of any neurological work-up [39, p. 2].

Dr. Leeson listed Mr. Purkey's admission to St. Joseph's Hospital on August 31, 1972, after a car was rear-ended while he was working on the engine. According to Dr. Leeson, the investigating officer reported that Mr. Purkey lost consciousness for several minutes. Dr. Leeson reported the defendant's medical diagnosis included multiple lacerations, face and forehead, and an acute cerebral concussion [39, p. 2].

The last incident reported by Dr. Leeson occurred on May 28, 1976, when Mr. Purkey was treated at St. Joseph's Hospital. Mr. Purkey's injuries included a facial contusion and a "green stick" fracture of the left cheekbone. Dr. Leeson states in the history section of the admitting documents he noted "following a car accident a few years previous, Mr. Purkey's behavior changed . . . doing things very carelessly as if he wants to be apprehended." Dr. Leeson also reported from his conversations with Mr. Purkey that he had been "knocked unconscious in a fight on a basketball court in the Oregon Department of Corrections" [39, pp. 2 and 3].

Dr. Leeson reported the following results of psychological tests he administered to Mr. Purkey [39, pp. 3-6]:

> Personality Assessment Inventory:  There was some inconsistency in responses to similar items.  The score scales fall in the normal range.  The PAI profile is marked by significant elevations and the configuration of the clinical scales suggest a person with a history of severe substance abuse problems.  He is experiencing prominent stress, anxiety, and mild to moderate depressive symptoms.  He appears to be pessimistic and dwells on thoughts of worthlessness, hopelessness, and personal failure.  Indicators of a significantly higher than average risk for suicide.

001032