Dr. Peterson indicated that Mr. Purkey's ability to have better control over his rage attacks is seemingly accomplished when he is "on a therapeutic dose of Tegretol and an adequate dose of anti-anxiety such as Valium or Klonopin" [40, p. 55].

The third psychological contribution identified by Dr. Peterson encompassed Mr. Purkey's reported early experience of sexual victimization by his mother and abnormal exposure to prostitutes at the encouragement of his father. Dr. Peterson said this "predisposed him to develop an abnormal attitude toward his own sexuality." According to Dr. Peterson, Mr. Purkey "has come to value frequent sexual release as the only reliable soothing experience in his life."

The final psychological contribution to his current behavior reported by Dr. Peterson is the emotional distress associated with the death of Jennifer Long. Dr. Peterson reported this included

> marital distress due to sexual dissatisfaction, intense guilt about not making enough money, intense guilt about making money but not being good enough as a plumber, intense guilt about needing anonymous sex which he kept from his wife, excessive alcohol intake, and intense crack cocaine use. [40, p. 56]

Dr. Peterson concluded in the death of Jennifer Long:

> It may have been that Jennifer Long personified the fantasy of the skilled prostitute because he had such intense distress over his difficulties adjusting to life on parole. When it became increasingly clear that she could not comply with his sexual ritual, his fantasy for at least temporary relief from his intense distress was destroyed. [40, p. 56.]

Dr. Peterson reported that Mr. Purkey perceived himself as a "good person who has done bad things, but still deserves forgiveness." In his family environment, he never felt valued or experienced parental nurturing. Dr. Peterson reported Mr. Purkey "found himself caught up in self-defeating behaviors." Dr. Peterson opined that [40, pp. 56 and 57].

> Mr. Purkey really never had any reasonable unfettered access to just feeling good about himself. He had to somehow sexually relate to women, be high, drunk, be

successful, be nurtured or he would be stuck having to face what he thought was his own tragic life.

Dr. Peterson reported that these biological, psychological, and social impacts "on Mr. Purkey's behavior are presently active, were active at the time of the Mary Bales homicide in October 1998, and were active in January 1998 during the Jennifer Long homicide." Additionally, Dr. Peterson opined that Mr. Purkey "expressed real remorse for his killing of Jennifer Long and . . . great empathy for those he also hurt such as his wife and the Long family" [40, p. 57].

Dr. Peterson reported that his diagnosis of Mr. Purkey describes his current functioning as well as at the time of the Jennifer Long homicide. His diagnoses were [40, p. 57]:

> Axis I:     Cocaine Abuse with Hypersexuality
> Alcohol Abuse
> Dysthymia –Early Onset
> Polysubstance Dependence, Severe
> Partner Relational Problem
>
> Axis II:    Personality Disorder Not Otherwise Specified
>
> Axis III:   Documented history of closed-head injuries; mild frontal and temporal neuropsychological brain dysfunction as assessed by Dr. Leeson; amphetamine-induced seizure in 1988; 32-year history of intravenous drug use; drug induced psychosis in May 1998; history of drug-induced anxiety attacks; and unconfirmed reports of poisoning by his ex-wife.

Dr. Peterson reported that at the time of the Jennifer Long homicide Mr. Purkey was

> suffering mental disease from untreated severe psychiatric difficulties and intense emotional distress, which significantly reduced his mental capacity . . . by depriving him of normal impulse control. [40, p. 61.]

Dr. Peterson reported a number of mitigating factors for consideration of Mr. Purkey's actions on January 22, 1998. Some of these factors included his intoxication while on crack cocaine and distilled liquor; 32-year severe polysubstance dependence, severe psychosexual

001040

maldevelopment; mild frontal lobe and temporal lobe brain damage as reported by Dr. Leeson; and despite considerable antisocial behavior at times, Mr. Purkey "labors under the severe impairment of chronic mental disease" [40, pp. 62-65].

## MEDICAL HISTORY

Mr. Purkey was admitted to the St. Joseph Hospital and Rehabilitation Center on March 8, 1968, with a provisional diagnosis of multiple lacerations, superficial and deep; acute cerebral concussion; and acute toxic state, etiology unknown.  His final diagnosis remained the same. Dr. L.A. O'Donnell, Sr., recorded that the defendant was taken to St. Francis emergency room after sustaining multiple superficial lacerations from apparent glass to the left face, left anterior neck, left shoulder, and arm area.  His wounds required 51 sutures.  X-rays taken of Mr. Purkey's skull and cervical spine were negative.  The neurologic examination was reported as negative.  Dr. O'Donnell reported that in 1964, Mr. Purkey sustained a traumatic chondritis to the lower left anterior rib cage area while playing football [3, pp. 236 and 237].

L.E. VinZant, M.D., examined Mr. Purkey and reported on March 9, 1968, that "he does not remember the accident nor soon after the accident."  He noted the defendant's pupils were equal and reactive to light, an absence of nystagmus, and the visual fields normal to confrontation.  The neurological examination was negative.  Dr. VinZant stated, "I would expect a complete recovery of this individual" [3, p. 238].

Admission records indicated Mr. Purkey received Empirin #3 for headache upon arrival.  Progress notes of March 8, 1968, indicate "Pts aunt here a few minutes – says he vomited lg. amt of blood and was unconscious before admission to this hospital.  Mr. Purkey was discharged from St. Joseph Hospital on March 15, 1968 [3, pp. 241, 243, 265].

Mr. Purkey was admitted to St. Joseph Hospital on April 29, 1968, after his involvement in a two car accident.  He suffered multiple abrasions and contusions of his face and a large abrasion to his right elbow.  Records indicate examination found his chest clear, abdomen soft, deep tendon reflexes and neurological examination within normal limits.  X-rays of the lumbosacral spine determined no evidence of fracture, dislocation, or other bony abnormality.  The skull x-ray failed to reveal evidence of fracture or other abnormality of the cranial wall

001041

or intracranial structures.  X-rays of Mr. Purkey's right elbow, left knee, and dorsal spine evidenced no fractures and were otherwise unremarkable [3, pp. 282 and 283].

On November 17, 1968, Mr. Purkey was admitted to St. Joseph Hospital at the request of his aunt because of a disturbance described as "drinking and fighting."  Dr. Newsome noted in his records "patient is known to me and other evaluative agencies because of past behavior involving conflict with authorities."  Dr. Newsome noted his diagnosis of Mr. Purkey as "Passive Aggressive Personality."  On November 19, 1968, Dr. Newsome recorded "Behavior well controlled without medication."  The defendant was dismissed to the custody of his aunt on November 21, 1968 [3, p. 370].

On October 27, 1970, Mr. Purkey received a physical examination from Jorge Tomas, M.D., who reported he was "essentially healthy male." In his report, Dr. Tomas noted a March 1968 car accident; the source of this information was not identified but may have been record review or an interview with Mr. Purkey.  Dr. Tomas's notes indicate that Mr. Purkey sustained lacerations and a head concussion resulting in his being "unconscious for more than 4 or 5 hours" [41, p. 847] but the source of this information is not identified.  On a questionnaire, Mr. Purkey reported a history of migraine headaches, asthma, German measles, chicken pox, Whooping cough, and bone or joint disease. The form noted paralysis of the right leg when he was 4 or 5 years old [41, pp. 847-849].

The Kansas State Reception and Diagnostic Center completed a physical examination of Mr. Purkey on October 28, 1970 that was unremarkable [41, pp. 835-837].

The Kansas State Reception and Diagnostic Center completed a physical examination of Mr. Purkey on April, 14, 1971, that was unremarkable.  Dr. Tomas noted that Mr. Purkey was "essentially a healthy male" [41, pp. 835-837].

On August 31, 1972, Mr. Purkey was admitted to St. Joseph Hospital after sustaining a long laceration, curved, of the left forehead, several smaller lacerations of the right mandible area, and a small transverse laceration of the right elbow.  Mr. Purkey reported he had been working on a car with the hood up around midnight when his vehicle was hit in the rear by another vehicle.  According to Dr. O'Donnell's report, the investigating officer advised that Mr. Purkey was unconscious for several minutes following the injury.  This was noted

001042

as the primary reason for his admission. At the time of admission his physical examination was recorded as unremarkable with the exception of the above-noted injuries [3, pp. 211-212].

On September 1, 1972, Dr. O'Donnell indicated "no report on skull X-rays—will review." He also noted that "this patient has had a severe emotional unstable background, both genetic and environmental and I think he is heading for trouble." Dr. O'Donnell reported a conversation with the defendant's mother who indicated behavioral problems with him at home. Dr. O'Donnell requested a "psychogenic consult" regarding Mr. Purkey. On September 3, 1972, Dr. O'Donnell reported that "this patient took French leave of the hospital yesterday afternoon and has not been seen since." According to Dr. O'Donnell's report, Mr. Purkey left partially completed psychological evaluation sheets. Dr. O'Donnell wrote, "I think he needs psychiatric treatment much and has needed it for some time" [3, pp. 214-215].

Mr. Purkey received a general physical at the Kansas State Industrial Reformatory on October 16, 1973, and it was noted "patient is apparently healthy physically with no new complaints whatsoever" [42 pp. 834-837].

Kulwant Singh, M.D., noted on the defendant's September 2, 1974, physical examination at the Kansas State Reception and Diagnostic Center, "essentially healthy male. He gives a history of asthma but there are no clinical evidence at the present time" [41, pp. 812-814].

On September 26, 1974, Dr. Singh wrote that the "subject denies severe head injuries or loss of consciousness." No abnormalities were reported on physical or neurological examinations. Routine laboratory findings were reported, including a negative Tine test [41, p. 1024].

As noted above, Mr. Purkey was admitted to the Wesley Medical Center on February 25, 1976, with a tentative diagnosis of "overdose." He was unable to give any history prior to admission. His wife thought her husband had overdosed. R.D. Murray, M.D., reported that Mr. Purkey was known to have taken some unknown amount of alcohol, 5 tablets of Tranzene, and an unknown amount of Tylenol #3. Mr. Purkey was given an IV D-5W .45 normal saline running at 200 cc per hour. His stomach was "lavaged," and he was kept on oxygen for the first 12 hours. According to Dr. Murray's report, "it took approximately 18 hours for the patient to wake up" [45, pp. 129-130].

001043

On May 30, 1976, Mr. Purkey received medical attention at St. Joseph Hospital after stating the left side of his face was in pain.  Mr. Purkey reported he was involved in a fight and was struck in the face on May 26, 1976.  Mr. Purkey complained the left side of his face was numb and that he was having problems opening his mouth.  Records indicate Mr. Purkey received Penicillin and x-rays, but the results of the x-rays were not indicated [3, p. 269].

After a physical on October 21, 1976, Robert W. Hwang, M.D., concluded that Mr. Purkey was an essentially healthy male.  On Dr. Hwang's report of examination he noted Mr. Purkey is "suffering chronic headaches and running nose" [41, pp. 803-806].

Dr. Singh authored a medical summary of his examination of the defendant dated November 9, 1976.  Mr. Purkey told Dr. Singh that he was hospitalized for about three days with a concussion in January of 1976.  No additional details of this hospitalization were disclosed.  Dr. Singh considered Mr. Purkey an essentially healthy male.  While at KRDC, Dr. Singh stated, Mr. Purkey was seen on sick call with minor complaints [41, p. 519].

Romeo Villar, M.D., placed Mr. Purkey on "medical convalescence for one week" to address a chronic sore throat beginning January 24, 1978 [43, p. 784].

On June 15, 1978, Brian W. Joseph, M.D., authored a letter to the defendant verifying his prescription of Cylert 18.75 mgm, (1) daily and seemed to be responding to Mr. Purkey's complaint of no noticeable effects.  Dr. Joseph wrote, "I prefer to start on a small dose and build gradually" [46, p. 779].

Kansas State Penitentiary sick call treatment records on July 6, 1978, indicate that Mr. Purkey was taking Cylert for speech impairment [43, p. 780].

Mr. Purkey reported to Kansas State Penitentiary Hospital on December 3, 1978, after being stabbed in his left arm and abdomen. According to R. Buford, Sr., P.M.A., the defendant had pressure bandages applied to his wounds, oxygen was provided, and he was transported to St. Johns emergency room.  No further details about the injuries were found in the medical records, and Mr. Purkey was discharged on December 8, 1978 [44, pp. 788-798].

001044