# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | | |
|---|---|---|
| WESLEY IRA PURKEY, | ) | No. 06-8001-CV-W-FJG |
| Movant, | ) | |
| | ) | |
| v. | ) | APPLICATION FOR CERTIFICATE |
| | ) | OF APPEALABILITY |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

Pursuant to 28 U.S.C. § 2253(c)(1) and Rule 22(b)(1), Federal Rules of Appellate Procedure (FRAP), Purkey requests a certificate of appealability on the four issues addressed herein. Purkey seeks to appeal from this Court's denial of his Motion to Vacate, Set Aside or Correct His Sentence Pursuant to 28 U.S.C. § 2255 (Doc. 47), his Motion to Strike the Statement of Frederick A. Duchardt, Jr. (Doc. 83), and his Motion to Set Matter for an Evidentiary Hearing (Doc. 84). This Court's order was dated September 29, 2009 (Doc. 89), and the order denying the motion to alter or amend the judgment was dated December 22, 2009 (Doc. 102).[1] Under Rule 22(b)(1), this Court "must either issue a certificate of appealability or state why a certificate should not issue."

## A. The legal standard governing issuance of a certificate of appealability

The Antiterrorism and Effective Death Penalty Act ("AEDPA") requires, as a precondition to appellate review of the denial of a motion brought pursuant to 28 U.S.C. § 2255, that a certificate of appealability issue upon a showing that the applicant has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. §

---

[1] A notice of appeal is filed contemporaneously herewith.

1

**Exhibit 11**

2253(c)(2). *See Hohn v. United States*, 524 U.S. 236, 249 (1998). The Supreme Court of the United States has determined definitively what standards must be met by a litigant who seeks a COA. *See Miller-El v. Cockrell*, 537 U.S. 322 (2003); *Slack v. McDaniel*, 529 U.S. 473 (2000). In essence, the Court has adopted to AEDPA the standards that applied to the issuance of the former certificate of probable cause required in pre-AEDPA *habeas* litigation, as that standard was enunciated in *Barefoot v. Estelle*, 463 U.S. 880 (1983).[2]

In *Slack*, the Court stated:

Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The Petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

*Slack*, 529 U.S. at 484.

In *Miller-El*, the Court summarized its view as follows:

Consistent with our prior precedent and the text of the habeas corpus statute, we reiterate that a prisoner seeking a COA need only demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further.

*Miller-El*, 537 U.S. at 327. The Court explained further:

The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits. We look to the District court's application of AEDPA to petitioner's constitutional

---

[2] Prior to AEDPA, there was no requirement that a certificate of probable cause issue as a precondition to appellate review of a challenge to a *federal* conviction. The former requirement of a certificate of probable cause applied only to state prisoners acting pursuant to 28 U.S.C. § 2254.

2

**Exhibit 11**

claims and ask whether that resolution was debatable among jurists of reason. This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it.

*Miller-El*, 537 U.S. at 336. As developed further in *Miller El*, the issuance of a COA,

does not require a showing that the appeal will succeed. Accordingly, a court of appeals should not decline the application for a COA merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in *Slack* would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. After all, when a COA is sought, the whole premise is that the prisoner "has already failed in that endeavor." *Barefoot*, *supra*, [463 U.S.] at 893, n.4.

*Miller El*, 537 U.S. at 337. Also in accord with this approach are *Tennard v. Dretke*, 124 S.Ct. 2562, 2569, 2573 (2004) and *Banks v. Dretke*, 540 U.S. 668, 705 (2004). *See also*, *Carson v. Director*, 150 F.3d 973, 975 (8th Cir. 1998) ("[Petitioner] had made a 'substantial showing that reasonable courts might differ' as to whether the jury instructions violated his due process rights," and, therefore, a COA properly issued).

There is one additional facet to this discussion. That this 2255 arises in the context of a death-sentence is an additional reason that favors granting the COA. In *Barefoot v. Estelle*, the Court noted that "in a capital case, the nature of the penalty is a proper consideration" in determining whether to issue a COA. *Barefoot*, 463 U.S. at 893. *See also Jermyn v. Horn*, 266 F.3d 257, 279 n. 7 (3d Cir. 2001) ("'In a capital case, the nature of the penalty is a proper consideration in determining whether to issue a [COA]'"); *Graves v. Cockrell*, 351 F.3d 143, 150 (5th Cir. 2003) ("Any doubt regarding whether to grant a COA is resolved in favor of the petitioner, and the severity of the penalty may be

3

**Exhibit 11**

considered in making this determination"); *Clark v. Johnson*, 202 F.3d 760, 763 (5th Cir. 2000) ("[I]n capital cases, doubts as to whether a COA should issue must be resolved in favor of the petitioner"); *Valerio v. Crawford,* 306 F.3d 742, 767 (9th Cir. 2002) ("Because this is a capital case, we resolve in Valerio's favor any doubt about whether he has met the standard for a COA").

### B. A COA should issue with regard to the following issues

1.  A COA should issue to review the question of whether Purkey was denied the effective assistance of counsel in that counsel failed to adequately investigate and present the available mitigation evidence.

This ground was asserted as Grounds V through X in the 2255 Motion.  Doc. 47 at 10-33.  The facts and legal bases for relief were argued in detail in the Suggestions and Memorandum of Law In Support of the 2255 Motion and the Reply.  Doc. 52 at 11-36; Doc. 82 [Reply] at 2-53.  This ground asserts that, while trial counsel did present some mitigating evidence, counsel failed to adequately investigate and present significant mitigation evidence to the jury and to the defense experts for incorporation into their testimony.  Purkey submitted numerous affidavits in support of his arguments, a number of which contradicted the asserted "factual" statements by trial counsel concerning his investigation.

In essence, counsel was ineffective in the same fashion as counsel in *Wiggins v. Smith*, 539 U.S. 510 (2003) and *Rompilla v. Beard*, 545 U.S. 374 (2005).  Counsel failed to retain the services of a mitigation specialist, conducted only minimal background social history interviews himself, and, therefore, could not provide the complete and accurate information to the testifying experts for the defense or the jury.

4

**Exhibit 11**

Moreover, all of counsel's alleged "strategy" reasons offered even for the failure to interview witnesses, let alone present their testimony, lead to the same problem as in *Wiggins* and *Rompilla* where the issue was "not whether counsel should have presented a mitigation case.  Rather, we focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence of Wiggins' background *was itself reasonable*." *Wiggins*, 537 U.S. at 523 (emphasis in original).

Just as in *Wiggins* and *Rompilla*, there could be no valid reason for failing to adequately investigate.  Likewise, in the absence of information that would have been obtained in an adequate investigation, counsel could not make a valid tactical decision not to present evidence that counsel was not even aware of.

Nonetheless, at bottom, Purkey's trial counsel urged this Court to find his performance effective when he did not interview a number of the relevant mitigation witnesses (including Rex Newton, Ph.D., a neutral mental health expert employed by the State of Oregon, and Dion Leiker and Floyd Bose, former law enforcement officers in the State of Kansas), and inadequately interviewed Purkey's family members by attempting to elicit sensitive information in the presence of other people.  Counsel also advanced numerous strategic reasons for not calling powerful mitigation witnesses when he had not even interviewed those witnesses and could, therefore, have no idea what they would say.

As *Wiggins*, *Rompilla*, the Guidelines, and the other authorities cited in the 2255 Motion (Doc. 47), the Memorandum in Support (Doc. 52), and the Reply (Doc. 82), make clear, the Sixth Amendment demands more of trial defense counsel in a capital case.

5

**Exhibit 11**

Counsel in this case was simply ineffective and Purkey was prejudiced by counsel's failures because he was deprived of powerful mitigation evidence, including:

– corroboration and substantive information from Purkey's brother, Gary, and Purkey's friend, Peggy Martenay Noe, regarding Purkey's father's violence and his mother and grandmother's sexual abuse of Purkey and his brother;

– rebuttal evidence, countering the government's argument of recent fabrication, establishing Purkey's prior report of the sexual abuse to Dr. Newton in the Oregon Department of Corrections;

– rebuttal evidence from Dr. Newton countering the government's arguments that Purkey was racist and active in prison gangs; and

– significant positive character evidence, including very favorable testimony from two former law enforcement officers, Mr. Bose and Ms. Leiker.

Counsel also failed to adequately prepare defense witnesses for their testimony. This failure resulted in expert witnesses Bruce Leeson, Ph.D., Stephen Peterson, M.D., and Mark Cunningham, Ph.D., failing to provide any meaning or details to describe the generic label of "sexual abuse" endured by Purkey and in the experts losing credibility during cross-examination due to their unfamiliarity with portions of Purkey's background records and history. Important lay witnesses, Gary Hamilton and Angie Genail, provided only superficial, generic testimony due to the failure to adequately prepare them for their testimony. Finally, due to the failure to adequately interview and prepare "mitigation" witnesses, William Grant, M.D. and Mark Russell, counsel presented testimony that was more aggravating than mitigating.

6

**Exhibit 11**

In ruling on these issues, this Court simply made conclusory findings that Purkey "failed to overcome the presumption that Mr. Duchardt's actions were not sound trial strategy." The Court also made conclusory findings that counsel's "actions did not fall below an objective standard of reasonableness" and Purkey could not establish prejudice from counsel's actions or inactions. Doc. 89 at 4. Specifically, the Court relied on the assertion that "no jurors voted for a single mitigating factor," Doc 89 at 11, based on the evidence counsel presented to support the logically faulty extension of that assertion – i.e., jurors would, therefore, have necessarily rejected any and all evidence that counsel could have *but did not* prepare and present.

In addressing whether Purkey is entitled to a certificate of appealability, this Court need only make a threshold inquiry rather than fully considering whether Purkey has established entitlement to relief. *Miller-El v. Cockrell*, 537 U.S. at 337. This Court's assessment requires only "an overview of the claims" and "a general assessment of their merits." *Id.* At minimum, Purkey has established that reasonable jurists could debate whether he is entitled to relief, even if he might not prevail after "the case has received full consideration." *Id.* at 338. While Purkey submits that he can and will prevail on the merits, the question here is only "the debatability of the underlying constitutional claim, not the resolution of the debate." *Id.* at 342. Because the debatability has been established, Purkey is entitled to a certificate of appealability on this claim.

7

**Exhibit 11**

> 2.   <u>A COA should issue to review the question of whether an evidentiary hearing should have been conducted regarding Movant's claims of ineffective assistance of counsel, and whether this Court's findings are sufficient to provide for meaningful appellate review.</u>

> a.   An evidentiary hearing is required.

In dismissing Purkey's motion without an evidentiary hearing, this Court, per force, accepted the allegations in Purkey's 2255 motion as true.  After all, § 2255 requires a hearing as follows:  "Unless the motion and *the files and records of the case* conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255 (emphasis added); *accord*, *Nelson v. United States*, 297 Fed. Appx. 563,  No. 07-3071 (8th Cir. Oct. 27, 2008) (remanded because evidentiary hearing was required on several claims of ineffective assistance);[3] *Koskela v. United States*, 235 F.3d 1148 , 1149 (8th Cir. 2001) (remanded because evidentiary hearing was required on claim of ineffective assistance in failing to call certain witnesses).[4]

---

[3] Attached per FRAP 32.1.

[4] *See also Latorre v. United States*, 193 F.3d 1035 (8th Cir. 1999) (remanded because evidentiary hearing was required because the record was inconclusive on movant's claim); *Smith v. United States*, 182 F.3d 1023 (8th Cir. 1999) (remanded because evidentiary hearing was required regarding prisoner's ineffective assistance of counsel claim); *Shaw v. United States*, 24 F.3d 1040 (8th Cir. 1994) (remanded because evidentiary hearing was required because the claim of ineffective assistance was not "inadequate on its face"); *Neary v. United States*, 998 F.2d 563 (8th Cir. 1993) (remanded because evidentiary hearing was required on claim of ineffective assistance); *United States v. Unger*, 665 F.2d 251 (8th Cir. 1981) (remanded because evidentiary hearing was required on claim of ineffective assistance not refuted by the record); *Rose v. United States*, 513 F.2d 1251 (8th Cir. 1975) (remanded because evidentiary hearing was required on movant's claim that he was incompetent at the time of his guilty plea).

**Exhibit 11**

Interestingly, this Court's judgment relies heavily on the 117-page affidavit provided by Frederick Duchardt, while ignoring the thirty-one affidavits filed by Purkey.[5] The competing affidavits filed in this case clearly establish "question[s] of fact." *West v. United States,* 994 F.2d 510 (8th Cir. 1993) (remanded for evidentiary hearing because movant's allegations were sufficient to make a "question of fact"). In addition, the numerous factual disputes in the assertions made in the copious affidavits Purkey has filed and the one provided by Duchardt cannot be resolved without taking testimony. *See*, *e.g.*, *Watson v. United States*, 493 F.3d 960 (8th Cir. 2007) (remanded because evidentiary hearing was required before court could decide credibility questions); *Donahue v. United States*, 2000 U.S. App. LEXIS 18 (8th Cir. 2000) (remanded because evidentiary hearing was required where the government presented only the affidavit of trial counsel as evidence to rebut the claim of ineffective assistance of counsel). Nonetheless, this Court held:

> [N]o hearing is necessary in this case, because even if movant's allegations are true, and Mr. Duchardt was ineffective for failing to call certain witnesses or to present a more complete mitigation case, movant would not be entitled to relief. As noted above, of the twenty-seven mitigating factors which were presented to the jury, no jurors voted for a single mitigating factor. So, even if movant's counsel had called different or additional witnesses or introduced more or additional mental health or evidence relating to his abuse as a child and young adult, it is unlikely that the jury would have considered this mitigating evidence or that they would have sentenced movant to life in prison.

---

[5] Eight with his original motion (DOC 47), four with his supporting memorandum (DOC 52), fourteen with his reply (DOC 82) and five with his motion to strike Duchardt's affidavit (DOC 83).

9

**Exhibit 11**

(Doc. 89 at 10).  In reaching this conclusion, this Court applied three critical principles in a way that is certainly debatable among reasonable jurists.

First, the "reasonable probability of a different result," has a unique importance in the capital context.  The sentencing phase is "the most critical phase of a death penalty case."  *Smith v. Mullin*, 379 F.3d 919, 939 (10th Cir. 2004), *quoting Romano v. Gibson*, 278 F.3d 1156, 1180 (10th Cir. 2002).  It is then that "the jury is called upon to make a 'highly subjective, unique, *individualized* judgment regarding the punishment that a particular person deserves,'" *Turner v. Murray*, 476 U.S. 28, 33 (1986) (emphasis added), *quoting Caldwell v. Mississippi*, 472 U.S. 320, 340 n.7 (1985).  In the federal death penalty scheme, a non-unanimous jury in the penalty phase spares the defendant's life. *See* 18 U.S.C. § 3591 et seq.   In *Wiggins v. Smith*, 539 U.S. 510, 536 (2003), the Court noted that in this type of death penalty scheme, confidence in the outcome is undermined where there is "a reasonable probability that *at least one juror* would have struck a different balance."  (emphasis added).

Second, to prove that he was prejudiced by his attorneys' deficient performance at trial, Purkey does not even have to prove that but for that deficient performance one such juror *would have* voted to spare his life; only that such is a "reasonable probability."  In *Kyles v. Whitley*, 514 U.S. 419 (1995), the Court made clear:

> The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.

**Exhibit 11**

*Id*. at 434; *see also Strickland v. Washington*, 466 U.S. 668, 693 (1984) ("a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case"); *Nix v. Whiteside*, 475 U.S. 157, 175 (1986) ("a defendant need not establish that the attorney's deficient performance more likely than not altered the outcome in order to establish prejudice"). "[T]he adjective ["reasonable"] is important." *Kyles*, 514 U.S. at 434. Indeed, as explained in *Strickland* itself:

> "[R]easonable probability of a different result" is thus *less than a preponderance of the evidence*. It is present when an evaluation of all of the evidence that should have been before the jury is "sufficient to undermine confidence in the outcome."

*Strickland*, 466 U.S. at 693 (emphasis added).

Finally, in a capital case, a "reasonable probability" of a different sentence can only be determined by weighing the full "body of mitigation evidence" that was presented and that could have been presented that "might well have influenced the jury's appraisal of [the defendant's] moral culpability." *Williams v. Taylor*, 529 U.S. 362, 398 (2000). Without hearing the mitigation evidence that *could have been* presented, this Court has nothing with which to judge whether, when added to the mitigation actually presented, the full body of mitigation produced a "reasonable probability" that at least one juror would have voted to spare Purkey's life. Instead of looking at the full body of mitigation that the jury should have heard, this Court's judgment contorts the law and concludes that since the jury was not swayed by the mitigation that was presented it also would have rejected the full body of mitigation that *could have been* presented. This unsupported reasoning will make it impossible for any capital defendant to prove

11

**Exhibit 11**

prejudice.  Specifically, under this Court's reasoning, even if trial counsel had presented no mitigation evidence prior to the jury's rejection of mitigating factors, Purkey could not establish prejudice in §2255 proceedings.  That is not the state of the law.

Equally problematic with this Court's conclusion in this regard is its inconsistent opinion as to what the jury did or did not do with respect to finding mitigating factors. On the one hand, in rejecting Purkey's claim that his jury did not even acknowledge the mitigating factors before voting on them, this Court's judgment finds that the jury "simply chose not to give any weight to that evidence, which under the law they are entitled to do."  (Doc. 89 at 9).  But, then, to find that Purkey could not establish any prejudice from his claims of ineffective assistance of counsel, this Court's judgment opines that "no jurors voted for a single mitigating factor."  (Doc. 89 at 11).  Neither statement can be made with any certainty.  The fact is that the Verdict form is simply blank as to any mitigating factor.  At trial, this Court was initially willing to ask the jurors to complete the form, but the Government retorted, "Absolutely no[t]." (TR 2313).  No inquiry was made, though Purkey's case is the only case out of the Western District of Missouri in which the jury simply left the form *blank* as to all mitigating factors.[6]

The lack of any voting on Purkey's mitigating factors makes it impossible to ascertain what evidence the jury considered to be mitigating, how it may have weighed

---

[6] *Compare United States v. Moore*, No. 94-00194 (W.D. MO) (votes indicated – deadlocked); *United States v. Ortiz*, No. 98-00149 (W.D. MO) (votes indicated – death verdict); *United States v. Sinisterra*, No. 98-00311 (W.D. MO) (votes indicated – death verdict); *United States v. Tello*, No. 98-00311 (W.D. MO) (votes indicated – non-unanimous verdict); *United States v. Nelson*, No. 99-00303 (W.D. MO) (votes indicated – death verdict); *United States v. Haskell*, No. 00-00395 (W.D. MO) (votes indicated – life verdict); *United States v. Smith*, No. 02-05025 (W.D. MO) (votes indicated – non-unanimous verdict); *United States v. Montgomery*, No. 05-06002 (W.D. MO) (votes indicated – death verdict).

**Exhibit 11**

that evidence and how the full body of mitigating evidence that could have been presented would have been viewed by each *individual* juror. Indeed, the Eighth Circuit recognized as much in Purkey's direct appeal, noting that a "jury's identification of proven mitigating factors facilitates appellate review, especially when we have to evaluate the effect of any error on the sentence that the jury recommended." *United States v. Purkey*, 428 F.3d 738, 763 (8th Cir. 2005); *see also United States v. Rodriguez*, 2009 U.S. App. LEXIS 20921, *51-52, No. 07-1316 (8th Cir. September 22, 2009) (noting that the recorded votes on the mitigating factors facilitated appellate review).

In *Rodriguez*, the Government had argued that "the issue of punishment for the Defendant is not an issue of how it affects his family." *Id*. at 50. The majority agreed that this argument crossed the line. *Id*. at 50-51. Pointing to the jury's penalty-phase verdict form, however, the majority noted that the jury had "unanimously found that six members of Rodriguez's family 'will suffer emotional pain if [Rodriguez] is executed.'" *Id*. at 52. Thus, the recorded votes established that the *Rodriguez* jury had not "ignore[d] the family-impact" but simply imposed death in spite of that factor. *Id*. The same review cannot be had here because Purkey's jury did not record *anything*. Thus, there can be no assurance that the jury actually considered the mitigation, let alone that the jury considered it and rejected it. A blank form simply does not support either contradictory inference that this Court reaches.

This Court's judgment hinges on an assessment that it is "unlikely" that the jury "would have sentenced movant to life in prison" even if it heard his full body of mitigating evidence because it was not moved by what it actually heard. Aside from the

13

**Exhibit 11**

unsupported reasoning, this ignores the trouble the jury quite obviously had in returning its death verdict. The jury struggled for nearly eleven hours over the course of two days: It began deliberating at 11:30 a.m. on November 18, 2003, and recessed for the night at 4:15 p.m. (TR 10, 2297, 2309). The jury resumed deliberations at 8:37 a.m. on November 19, 2003 (*United States v. Purkey*, No. 4:01-cr-00308-FJG, Doc. 482), and it returned its verdict just over six hours later at 2:45 p.m. *Id.* This totals 10 hours, 53 minutes. This was not a "slam dunk" for the Government even with the incomplete mitigation case presented by trial counsel. Thus, it cannot be said that had the jury heard the full body of mitigating evidence available to trial counsel that there is no reasonable probability that even one juror would have held out for a life verdict. This issue is, at minimum, debatable among jurists of reason and, therefore, warrants a certificate of appealability.

      b.     The judgment is insufficient to provide for meaningful appellate review.

Finally, this Court's conclusory judgment rejecting Purkey's allegations of ineffective assistance are not in accord with § 2255, which requires this Court to determine the issues and make findings of fact and conclusions of law with respect thereto. Purkey has presented seventeen allegations of ineffective assistance of counsel and supported those with twenty-six affidavits.[7] Nonetheless, this Court's judgment largely ignores the allegations and never discusses any of the specific claims or evidence that counsel should have found and offered at trial. The entire discussion of Purkey's

---

[7] This excludes the five affidavits submitted with Purkey's motion to strike Duchardt's affidavit.

**Exhibit 11**

ineffective assistance claims fills less than two pages. While the findings mandated by §

2255 do not require this Court to enumerate every fact, this Court "must formulate

findings on the ultimate facts necessary to reach a decision." *Collins v. Henderson*, 180

F.3d 988, 990 (8th Cir. 1999). Ultimately, the findings of fact must "afford a reviewing

court a clear understanding of the basis of th[is] [C]ourt's decision." *Id*. The only

reference even to any type of claim Purkey presented came in the concluding paragraph

of this discussion and then only generically recited that Purkey had alleged that his

attorneys were "ineffective for failing to call certain witnesses or to present a more

complete mitigation case." (Doc. 89 at 11). This does not formulate the facts necessary

to reach the conclusion that, even if Purkey could show that counsel's performance was

deficient, he could not prove that he was thereby prejudiced. Reasonable jurists could

debate this issue and a certificate of appealability is warranted.

3.      A COA should issue to review the question of whether Frederick
        Duchardt's 117-page affidavit exceeded the scope of Purkey's
        waiver of his attorney-client privilege.

In denying Purkey's motion to strike the 117-page affidavit prepared by Frederick

A. Duchardt, which is more in the form of a formal adversary's brief, this Court relied

solely on the black letter law that justified its initial Order to execute *an* affidavit. (Doc.

89, pp 4-5, *citing Tasby v. United States,* 504 F.2d 332, 336 (8th Cir. 1974), *cert. denied*,

419 U.S. 1125, 95 S.Ct. 811, 42 L.Ed.2d 826 (1975) and *Stobaugh v. United States*, No.

06-3317-CV-S-RED, 2007 WL 628420, *1, n.1 (W.D.Mo. Feb. 27, 2007)). This misses

the point. Purkey never contended that his attorney could not execute *an* affidavit;

indeed, he did not oppose the Government's motion for an Order compelling Duchardt to

15

**Exhibit 11**

do so.    Purkey's objection to *this* affidavit is that (a) Duchardt unearthed far more attorney/client privileged communications than what Purkey's post-conviction claims warrant (b) without giving Purkey adequate notice so he could seek relief from the disclosures before they fell into the Government's hands and (c) conducted independent legal research and analysis seeking to disprove his former client's legal arguments (*See* Doc. 83 at 8-29).

This Court's judgment begins from the correct premise, i.e., "this Court found that movant had waived his attorney-client privilege as to his ineffective assistance of counsel claims…"    (Doc. 89 at 5).    This Court's conclusion "that Mr. Duchardt did not act improperly in filing the Affidavit nor did he violate his duty of loyalty or his duty of confidentiality, *as the attorney-client privilege had been waived*," (Doc. 89 at 5) (emphasis added), however, does not follow.    *The* attorney-client privilege was not waived *to the extent of Duchardt's disclosures*.    The waiver authorized by *Tasby* and the rules of professional conduct is much narrower than this Court's conclusion implies. Under ABA Model Rule 1.6(b)(5) a "lawyer may reveal information relating to the representation of a client to the extent the lawyer *reasonably* believes *necessary*...to respond to allegations in any proceeding concerning the lawyer's representation of the client..." (emphasis added); *accord* Missouri Supreme Court Rule 4-1.6(b)(3) and Comment to Rule 4-1.6, ¶ 17.[8]

> [T]he rule *allows disclosure of only that information which is reasonably necessary to respond to the specific allegations* of malpractice, ineffective

---

[8] The Missouri Supreme Court Rules of Professional Conduct govern counsel admitted to practice in this Court.  Local Rule 83.5(c)(2).

**Exhibit 11**

assistance of counsel or ethical misconduct.  In certain instances, attorneys have exceeded this restriction, apparently in an effort to exact a toll upon the client alleging misconduct or malpractice against their attorney. The rule prohibits such, and an attorney's engaging in this type of conduct subjects him to disciplinary action, and possible civil liability.

J. McLain, "OPINIONS OF THE GENERAL COUNSEL: CONFIDENTIALITY – CAN YOU KEEP A SECRET?" 62 Ala. Law. 296, 297-298 (Sept. 2001) (emphasis added).

This Court's judgment, however, eliminates this limitation and transforms the limited waiver of privilege into a blanket waiver that gives counsel an unfettered license to disclose any and all privileged communications whether relevant to a claim of ineffectiveness or not.  Such an exception swallows the rule.  "An ethical code is not a garment that lawyers may don and doff at pleasure."  *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1264 (5th Cir. Tex. 1983).  The Professional Rules and *Tasby* required this Court to analyze each of Purkey's specific allegations of ineffectiveness and determine whether each response in Duchardt's 117-page affidavit was reasonably necessary to answer Purkey's specific allegations.  Because reasonable jurists could debate this issue, a certificate of appealability is warranted.

4.      <u>A COA should issue to review the question of whether trial counsel rendered ineffective assistance in not calling Dr. Peterson to rebut the Government's unfounded charge that Purkey had fabricated his recantation of the kidnaping "[r]ight before this trial" rather than having done so more than a year before trial.</u>

The Government elicited from Agent Tarpley that "[r]ight before this trial" was the first time he had ever heard that Purkey was claiming not to have kidnaped Ms. Long.  Tr. 566.  The Government then elaborated to the jury that Purkey had just "change[d] his story" in order to avoid the death penalty; "he's trying to get out of it"; and "All the way

**Exhibit 11**

up, all the way through this case up until recently it's been I kidnaped her, I kidnaped her, I kidnaped her." Tr. 1135.

This, however, misled the jury. Purkey had denied the kidnaping throughout the course of his case. When he first met with anyone on the defense team, he told them that he did not kidnap Ms. Long; indeed, he frequently asked to take a polygraph with respect to the kidnaping. On August 13, 2003, Dr. Peterson authored his report, which detailed his four interviews of Purkey a year earlier – September 19, 2002; October 10, 2002; November 6, 2002; and December 30, 2002. During those interviews, Purkey had denied kidnaping Ms. Long, telling Dr. Peterson that she had gone with him voluntarily. Exhibit 23 at 45-46. Before trial, this Court sustained the Government's motion *in limine* to preclude Dr. Peterson from testifying that Purkey had denied kidnaping Ms. Long. Doc. 337, 440.

On November 4, 2003, *immediately* before court reconvened to hear the defense case-in-chief, Duchardt informed Purkey that he had to testify because the defense had nothing else on which to base its argument that there was no kidnaping. This had not been the plan before trial; indeed, O'Sullivan had *less than one hour* in which to prepare herself and her client. She told Purkey that if he mentioned his statements to Dr. Peterson, the court would strike his *entire* testimony. Neither she, nor Duchardt prepared Purkey to face cross-examination. He was left to flounder on his own.

On cross-examination, government counsel asserted, "here recently you have come up with this new story that you didn't kidnap her?" Tr. 1008. Believing O'Sullivan that his *entire* testimony would be struck if he documented his recantations, Purkey

18

**Exhibit 11**

simply replied, "That's true." Tr. 1008. Not only did defense counsel not correct this on re-direct, they did not rebut it by calling Dr. Peterson to testify. In this regard, Duchardt told Purkey after trial that he could have called Dr. Peterson, but he did not think to do it.

Trial counsel were ineffective in failing to call Dr. Peterson to testify about Purkey's prior consistent statement in order to rehabilitate Purkey. This would have supported counsel's defense theory and bolstered Purkey's credibility which was central to his defense. His prior consistent out-of-court statement was *not hearsay* when "offered to rebut an express or implied charge against the declarant of recent fabrication…." *United States v. Bercier*, 506 F.3d 625, 629 (8th Cir. 2007) *quoting* FRE 801(d)(1)(B).

Here, Dr. Peterson's testimony would have described Purkey's prior consistent out-of-court statement, offered to rebut the government's unfounded charge that Purkey had fabricated his recantation "[r]ight before this trial." Dr. Peterson could have testified that: Purkey invited Ms. Long to party with him, thinking he was talking to a prostitute. Exhibit 23 at 45. "[She] wanted to go to Kansas City, Kansas with him." *Id.* at 46. He told the FBI that he kidnaped her, however, so that he would get a "federal crime of kidnaping." *Id.*

These prior consistent statements came long before the charged recent fabrication, and reasonably competent attorneys would have offered them. Nothing was more important to Purkey's case than his own credibility. *See, e.g.,* Tr. 1104 ("It is ironic that both we and the government are *absolutely dependent on one man's credibility* and

19

**Exhibit 11**

believability in this case, and that one man is Wes Purkey.") (emphasis added). The government sought the upper hand by misleading the jury to believe that Purkey's recantation of the kidnaping had come not two years before trial but *right before trial*. And the simple fact is that there is no reasonable strategy for not calling Dr. Peterson, who was ready, willing and able to testify. Counsel's failure to do so did irreparable harm to Purkey. This issue is debatable amongst jurists and warrants a certificate of appealability.

CONCLUSION

For the reasons set forth above, this Court should grant a certificate of appealability on each of the asserted claims and grant any additional relief the Court may deem just or proper.

Respectfully submitted,

| | |
|---|---|
| Teresa L. Norris, Esq. | Gary E. Brotherton, Esq. |
| P.O. Box 11744 | 601 W. Nifong Blvd., Ste. 1C |
| Columbia, SC 29211 | Columbia, Missouri 65203 |
| (803) 765-1044 (Phone) | (573) 875-1571 Phone |
| (803) 765-1143 (Fax) | (573) 875-1572 Fax |
| teresa@blumelaw.com | GEBrotherton@LegalWritesLLC.com |
| Co-counsel to Movant | Co-counsel to Movant |

By:    /s/  Teresa L. Norris
TERESA L. NORRIS
Co-counsel to Movant

20

**Exhibit 11**

CERTIFICATE OF SERVICE

This will certify that, on today's date, this application was served upon the United States by filing same via CM/ECF.

/s/ Teresa L. Norris
Teresa L. Norris

Dated: Columbia, SC
March 24, 2010

Case 4:06-cv-08001-FJG    Document 107    Filed 03/24/10    Page 21 of 21

**Exhibit 11**