UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| WESLEY IRA PURKEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-00414-JPH-DLP |
| | ) | |
| UNITED STATES OF AMERICA, et al. | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS**

Wesley Purkey is a federal prisoner on death row at the United States Penitentiary in Terre Haute, Indiana. He was sentenced to death 16 years ago in the United States District Court for the Western District of Missouri after a jury found him guilty of kidnapping and murdering Jennifer Long. The conviction and sentence were affirmed on direct appeal. Mr. Purkey sought postconviction relief under 28 U.S.C. § 2255 in the district court where he was convicted and sentenced. That request was denied by the district court and affirmed on appeal.

Mr. Purkey cannot bring a successive § 2255 motion in the court of conviction, so he seeks relief from this Court in the form of a 28 U.S.C. § 2241 petition that raises eight claims. These claims, however, cannot be raised and adjudicated under § 2241 because they do not fall within any of the limited circumstances the Seventh Circuit has recognized when a federal prisoner may challenge a conviction and sentence by way of § 2241. Moreover, there is not a structural problem with § 2255 when applied to Mr. Purkey's case. For these

1

reasons, Mr. Purkey's § 2241 action must be dismissed and his petition for a writ of habeas corpus denied.

## I.

A full recitation of the facts and procedural background is set forth in the two opinions issued by the United States Court of Appeals for the Eighth Circuit following Mr. Purkey's appeals. *See United States v. Purkey*, 428 F.3d 738, 744-46 (8th Cir. 2005) ("*Purkey I*"); *United States v. Purkey*, 729 F.3d 860, 866-68 (8th Cir. 2013) ("*Purkey II*").

### A.     Factual Background

While the details of Mr. Purkey's crimes are not relevant to the ultimate resolution of his legal claims, a brief summary is appropriate for context.

Jennifer Long, a sixteen-year-old high school sophomore, disappeared in January 1998. *Purkey I*, 428 F.3d at 745. She was walking on a sidewalk in Missouri when Mr. Purkey picked her up in his truck and drove her to his house in Kansas. *Purkey II*, 729 F.3d at 866-67. Mr. Purkey raped her and, after she attempted to escape, "became enraged and repeatedly stabbed [her] in the chest, neck, and face with [a] boning knife, eventually breaking its blade inside her body." *Id.* Mr. Purkey dismembered her body with a chainsaw, burned her remains in his fireplace, and dumped them into a septic pond. *Id.*

No one knew what happened to Jennifer Long until December 1998. *Purkey I*, 428 F.3d at 745. At that time, Mr. Purkey faced a life sentence for murdering eighty-year-old Mary Ruth Bales, whom Mr. Purkey bludgeoned to death with a hammer in her own home. *Purkey II*, 729 F.3d at 867–68. Mr.

Purkey confessed to law enforcement that he had kidnapped, raped, and murdered Jennifer Long earlier that year. *Id.* He also admitted taking "extraordinary measures to dispose of the body, including dismembering it with a chain saw and burning the remains[.]" *Purkey I*, 428 F.3d at 745. Law enforcement recovered remnants of crushed human bones where Mr. Purkey told them he had disposed of them, and in his former house where the murder took place. Mr. Purkey led law enforcement to where he left her remains. *Id*; *Purkey II*, 729 F.3d at 867; Dkt. 33-1 at 76–78.

**B.    Procedural Background**

Mr. Purkey was indicted for the kidnapping and murder of Jennifer Long on October 10, 2001, in the United States District Court for the Western District of Missouri. *See United States v. Purkey*, No. 4:01-cr-00308-FJG (W.D. Mo. Oct. 10, 2001), Dkt. 1. On November 5, 2003, a jury found Mr. Purkey guilty. *Id.*, Dkt. 461.

The separate penalty phase of the proceedings lasted seven days. Mr. Purkey's counsel presented 27 mitigating factors, including evidence of brain abnormalities and abuse as a child. Dkt. 23-37 at 94-97. The mitigation evidence included the testimony of 18 witnesses over two days. Dkt. 38-1; Dkt. 39-1; Dkt. 40-1; Dkt. 41-1; Dkt. 42-1. Finding the existence of all six statutory aggravating factors, the jury recommended a sentence of death. *Purkey*, No. 4:01-cr-00308-FJG, Dkt. 487. The District Court sentenced Mr. Purkey to death on January 23, 2004. *Id.*, Dkt. 505.

Mr. Purkey appealed his conviction and sentence to the United States Court of Appeals for the Eighth Circuit. He raised several challenges to the pretrial proceedings, jury selection, and the guilt and penalty phases. *Purkey I,* 428 F.3d at 746–64. One of those challenges—which is similar to claims before this Court—was that the District Court erred by accepting the mitigating factors portion of the verdict without requiring the jury to write out their specific findings. *Id.* at 763. The Eighth Circuit rejected Mr. Purkey's claims and affirmed his conviction and sentence. *Id.* at 764. Mr. Purkey's petition for writ of certiorari was denied by the United States Supreme Court on October 16, 2006. *See Purkey v. United States*, 127 S. Ct. 433 (2006).

On November 25, 2006, Mr. Purkey initiated postconviction proceedings by filing a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 in the United States District Court for the Western District of Missouri. *See Purkey v. United States*, 2009 WL 3160774 (W.D. Mo. Sept. 29, 2009). The same District Judge who presided over Mr. Purkey's trial presided over his § 2255 motion.

Mr. Purkey made 17 allegations of ineffective assistance against his trial counsel—Frederick Duchardt, Jr. and Laura O'Sullivan. *Id.* at *1-3. Mr. Duchardt submitted a 117-page affidavit to "refute" Mr. Purkey's claims. *Id.* at *2. The District Court substantially relied on Mr. Duchardt's affidavit in rejecting the ineffective assistance of counsel claims. *Id.* Mr. Purkey also alleged several due process violations. *Id.* at *3-5. The District Court rejected these claims as well and denied Mr. Purkey's § 2255 motion. *Id.* at *6. The District Court later

denied Mr. Purkey's Rule 59(e) motion to alter or amend the judgment, *see Purkey v. United States*, 2009 WL 5176598, *3 (W.D. Mo. Dec. 22, 2009), and his request for a certificate of appealability, *see Purkey v. United States*, 2010 WL 4386532, *10 (W.D. Mo. Oct. 28, 2010).

Mr. Purkey sought a certificate of appealability from the Eighth Circuit on several claims, *see* Dkt. 48-13, but the Eighth Circuit granted Mr. Purkey a certificate of appealability on only two of them, *see Purkey II*, 729 F.3d at 861; Dkt. 48-14. First, the Eighth Circuit permitted Mr. Purkey to raise three issues regarding the ineffectiveness of his trial counsel during the penalty phase: "(1) his alleged failure to adequately prepare and present the testimony of three expert witnesses, (2) his alleged failure to adequately investigate and prepare two mitigating witnesses, which resulted in their testimony being more prejudicial than beneficial, and (3) his alleged failure to adequately investigate and present other mitigating evidence." *Purkey II*, 729 F.3d at 862. These issues are similar to the second claim Mr. Purkey raises in this Court. Second, the Eighth Circuit permitted Mr. Purkey to challenge whether the District Court abused its discretion by denying relief without an evidentiary hearing. *Id.*

The Eighth Circuit rejected both of Mr. Purkey's claims. It reasoned that it need not decide whether Mr. Purkey could establish deficient performance— and consequently did not consider Mr. Duchardt's affidavit—because Mr. Purkey could not establish prejudice given the "particularly gruesome" nature of the crime. *Id.* at 862-68 & n.2. As to whether the District Court should have held an evidentiary hearing, the Eighth Circuit reasoned that Mr. Purkey could not

establish prejudice even taking his evidence as true, so it was not an abuse of discretion to decline to hold an evidentiary hearing. *Id.* at 869.

Mr. Purkey petitioned for panel rehearing, Dkt. 48-15, which the Eighth Circuit denied on December 17, 2013, Dkt. 48-16. The Supreme Court denied Mr. Purkey's petition for writ of certiorari on October 14, 2014. *See Purkey v. United States*, 135 S. Ct. 355 (2014).

On July 25, 2019, the Department of Justice set Mr. Purkey's execution date for December 13, 2019. He filed the instant habeas petition under 28 U.S.C. § 2241 on August 27, 2019. He filed an amended petition on September 12, 2019. The petition was fully briefed on October 28, 2019.

## II.

Mr. Purkey raises eight claims in his § 2241 petition:

(1) trial counsel provided ineffective assistance by failing to challenge Juror 13;

(2) trial counsel provided ineffective assistance by failing to investigate, develop, and present compelling mitigation evidence;

(3) Mr. Duchardt perpetrated a fraud on the Court during the § 2255 proceedings by submitting an affidavit containing false and misleading statements to undermine Mr. Purkey's ineffective assistance of counsel claims;

(4) Mr. Purkey's death sentence violates the Eighth Amendment because there is a substantial possibility that the jury instructions led the jury to believe that they could not consider certain mitigating evidence;

(5) Mr. Purkey's death sentence violates the Sixth Amendment because the jury did not find beyond a reasonable doubt each fact necessary to impose a death sentence;

(6) imposition of the death penalty under the Federal Death Penalty Act violates the Eighth Amendment;

(7) imposition of the death penalty on individuals such as Mr. Purkey who suffer from a severe mental illness violates the Eighth Amendment; and

(8) trial counsel provided ineffective assistance by improperly advising Mr. Purkey before he testified at the pre-trial suppression hearing. *See* Dkt. 23.

The United States takes the position that the Court cannot reach the merits of these claims because Mr. Purkey cannot raise them in a § 2241 petition. Dkt. 49. That's true if Mr. Purkey cannot meet the requirements of 28 U.S.C. § 2255(e)—commonly referred to as the Savings Clause. *See Webster v. Daniels*, 784 F.3d 1123, 1135 (7th Cir. 2015) (en banc). Mr. Purkey argues that some of his claims meet these requirements. Dkt. 23; Dkt. 58.

### III.

The Court begins its analysis by examining the statutory framework governing federal prisoners' postconviction challenges. The Court next assesses whether Seventh Circuit precedent requires or allows Mr. Purkey's claims to proceed under the Savings Clause. The Court then turns to Mr. Purkey's arguments for recognizing a new category of claims that can be brought via § 2241.

**A.   Statutory Framework for Federal Prisoners Seeking Postconviction Relief**

The only way a federal prisoner may pursue postconviction relief in a separate civil action is under 28 U.S.C. §§ 2255 and 2241.

1. Section 2255

"As a general rule, a federal prisoner wishing to collaterally attack his conviction or sentence must do so under § 2255." *Chazen v. Marske*, 938 F.3d 851, 856 (7th Cir. 2019).   Congress has placed limitations on a federal prisoner's ability to bring a § 2255 action.   First, such action can only be brought in the court which imposed the sentence.   28 U.S.C. § 2255(a).   Second, a federal prisoner is limited to bringing one § 2255 motion, unless the court of appeals for the district where the action is filed determines that a second or successive motion contains:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h).

2. The Savings Clause and Section 2241

Congress created within § 2255 a narrow exception to the "general rule" that requires a federal prisoner to bring a collateral attack under § 2255—the Savings Clause.   Under the Savings Clause, a prisoner can seek a writ of habeas corpus through an action under § 2241 if the prisoner can show "that the remedy

by [§ 2255] motion is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). Unlike a § 2255 action, which must be brought in the district where the sentence was imposed, a § 2241 action must be brought in the district where the prisoner is in custody. *Webster*, 784 F.3d at 1124.

Consistent with the "general rule," the Savings Clause "steers almost all prisoner challenges to their convictions and sentences toward § 2255" and away from § 2241. *Shepherd*, 911 F.3d 861, 862 (7th Cir. 2018). Consequently, a federal prisoner may seek relief under § 2241 "[o]nly in rare circumstances where § 2255 is inadequate or ineffective to test the legality of the prisoner's detention . . . ." *Light v. Caraway*, 761 F.3d 809, 812 (7th Cir. 2014) (citations and quotations omitted). To determine whether Mr. Purkey's petition presents such a "rare circumstance," the Court looks to Seventh Circuit precedent.

### B. Instances Where the Seventh Circuit has Found the Savings Clause to Apply

Determining whether § 2255 is inadequate or ineffective is a "very knotty procedural issue" of "staggering" complexity. *Chazen*, 938 F.3d at 855-56. While it is "hard to identify exactly what [the Savings Clause] requires," *id.* at 863 (Barrett, J., concurring), several guiding principles have emerged from the cases.

Section 2255 is inadequate or ineffective as applied to a specific case only where there is "some kind of structural problem with section 2255." *Webster*, 784 F.3d at 1136. A structural problem requires "something more than a lack of success with a section 2255 motion." *Id.* It must "foreclose[] even one round of effective collateral review, unrelated to the petitioner's own mistakes." *Poe v.*

*LaRiva*, 834 F.3d 770, 773 (7th Cir. 2016) (citation and quotation omitted). Section 2255 is inadequate or ineffective where the court finds that the federal prisoner did not have "a reasonable opportunity [in a prior § 2255 proceeding] to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence." *Chazen*, 938 F.3d at 856 (alteration in original) (quoting *In re Davenport*, 147 F.3d 605, 609 (7th Cir. 1998)).

Applying these principles, the Seventh Circuit has found a structural problem with § 2255 in three instances:

1. When a claim is based on a new rule of *statutory* law made retroactive by the Supreme Court. *See Davenport*, 147 F.3d at 610.

2. When a claim is based on a decision of an international tribunal that could not have been raised in an initial § 2255 motion. *See Garza v. Lappin*, 253 F.3d 918, 920 (7th Cir. 2001).

3. When a claim is based on limited types of new evidence that "would reveal that the Constitution categorically prohibits a certain penalty." *Webster*, 784 F.3d at 1139.

*See id.* at 1135–36 (analyzing *Davenport*—which contains the Seventh Circuit's "most extensive treatment" of the Savings Clause—and *Garza* when setting out the Seventh Circuit's Savings Clause precedents); *see also Fulks v. Krueger*, 2019 WL 4600210, *3 (S.D. Ind. Sept. 20, 2019). The parties appear to agree that these three cases identify the structural problems with § 2255 recognized by the Seventh Circuit. *See* Dkt. 49 at 38–42; Dkt. 58 at 7–9.

1. *Davenport*

In *Davenport*, the Seventh Circuit found a structural problem in § 2255 because § 2255(h) does not permit federal prisoners to file a second or successive § 2255 motion raising claims based on new *statutory* law. The petitioner sought the benefit of a Supreme Court decision changing the Seventh Circuit's interpretation of a statute that existed at the time of his first § 2255 motion. *Davenport*, 147 F.3d at 610. Because the Supreme Court changed the governing law after the petitioner's § 2255 proceedings had concluded, he "could not [have] use[d] a first motion under [§ 2255] to obtain relief on a basis not yet established by law." *Id.* Nor could he have received authorization to file "a second or other successive motion [under § 2255(h)] . . . because the basis on which he [sought] relief [was] neither newly discovered evidence nor a new rule of *constitutional* law." *Id.* (emphasis added); *see Poe*, 834 F.3d at 773 ("Where *Davenport* recognized a structural problem in § 2255(h) is in the fact that it did not permit a successive petition for new rules of *statutory* law made retroactive by the Supreme Court."). This structural problem was fixed in *Davenport* "by effectively giving such prisoners the relief that they would have had if § 2255(h)(2) had included them." *Chazen*, 938 F.3d at 864 (Barrett, J., concurring).

The Seventh Circuit has "developed a three-part test implementing *Davenport*'s holding." *Beason v. Marske*, 926 F.3d 932, 935 (7th Cir. 2019). The petitioner must establish that:

> (1) the claim relies on a statutory interpretation case, not a constitutional case and thus could not have been invoked by a successive § 2255 motion; (2) the petitioner could not have invoked

the decision in his first § 2255 motion and the decision applies retroactively; and (3) the error is grave enough to be deemed a miscarriage of justice.

*Id.*

### 2. *Garza*

In *Garza,* the Seventh Circuit again found a structural problem with § 2255 rooted in § 2255(h). After the conclusion of the petitioner's first § 2255, he received a decision from the Inter-American Commission on Human Rights finding that his rights were violated during the penalty phase of his criminal trial. *Garza,* 253 F.3d at 920. The petitioner wished to use this decision to challenge his death sentence. *Id.* Notably, the petitioner could not have petitioned the Inter-American Commission on Human Rights for relief until he had exhausted his "national remedies"—that is, until after he had filed a § 2255 motion. *Id.* Because it was "literally impossible" for the petitioner to have raised his claim in his § 2255 motion, there was a structural problem with § 2255 in that it did not "provide[] an adequate avenue for testing Garza's present challenge to the legality of his sentence." *Id.* at 922–23. Simply put, the petitioner could not have raised his claim in his initial § 2255, nor, as in *Davenport,* could he have received authorization to file a second or successive § 2255 motion under § 2255(h). *Id.* at 923.

### 3. *Webster*

In *Webster,* the Seventh Circuit held for the first and only time that the Savings Clause was met for a constitutional claim. The petitioner in *Webster* sought to challenge his death sentence as barred by *Atkins v. Virginia,* 536 U.S.

304 (2002), which held that the Eighth Amendment forbids the execution of a person with an intellectual disability. Although the petitioner had raised an *Atkins* claim in his § 2255 proceeding, he wished to present "newly discovered evidence" to support that claim in his § 2241 petition. *Webster*, 784 F.3d at 1125.

The Seventh Circuit found that "there is no categorical bar against resort to section 2241 in cases where new evidence would reveal that the Constitution categorically prohibits a certain penalty." *Id.* at 1139. The structural problem identified by the Seventh Circuit was based on at least two concerns. First, § 2255(h)(1) only allows a second or successive § 2255 motion if newly discovered evidence meets a certain threshold to demonstrate that the petitioner is not guilty of the *offense. Id.* at 1134–35, 1138. It does not allow for such motions if the petitioner presents newly discovered evidence that the petitioner is ineligible to receive his *sentence. Id.* Second, Congress could not have contemplated whether claims of categorical ineligibility for the death penalty should be permitted in second or successive § 2255 motions because the relevant cases— *Atkins* and *Roper v. Simmons*, 543 U.S. 551 (2005)[1]—had not been decided when § 2255 was enacted. *Webster*, 784 F.3d at 1138 ("[T]he fact that the Supreme Court had not yet decided *Atkins* and *Roper* at the time AEDPA was passed supports the conclusion that the narrow set of cases presenting issues of constitutional ineligibility for execution is another lacuna in the statute."); *id.* at

---

[1] In *Roper*, the Supreme Court held it violates the Eighth and Fourteenth Amendments to impose "the death penalty on offenders who were under the age of 18 when their crimes were committed." 543 U.S. at 578.

1139 ("In Webster's case, the problem is that the Supreme Court has now established that the Constitution itself forbids the execution of certain people: those who satisfy the criteria for intellectual disability that the Court has established, and those who were below the age of 18 when they committed the crime.").

*Webster* is the first and only time the Seventh Circuit permitted a constitutional claim to proceed through the Savings Clause. Indeed, the court "took great care to assure that its holding was narrow in scope." *Poe*, 834 F.3d at 774. It limited its holding to the narrow legal and factual circumstances presented in the case, stating explicitly that the case "will have a limited effect on future habeas corpus proceedings." *Webster*, 784 F.3d at 1140 n.9; *see Poe*, 834 F.3d at 774 ("[T]here is nothing in *Webster* to suggest that its holding applies outside the context of new evidence.").

To fall within *Webster*'s holding, the new evidence must meet three conditions:

> First, the evidence sought to be presented must have existed at the time of the original proceedings. . . . Second, the evidence must have been unavailable at the time of trial despite diligent efforts to obtain it. Third, and most importantly, the evidence must show that the petitioner is constitutionally ineligible for the penalty he received. Because the Supreme Court has declared only two types of persons (minors and the intellectually disabled) categorically ineligible for a particular type of punishment, our ruling is as a matter of law limited to that set of people—those who assert that they fell into one of these categories at the time of the offense. These three limitations are more than adequate to prevent the dissent's feared flood of section 2241 petitions[.]

*Webster*, 784 F.3d at 1140 n.9. It's thus "a rare case" that qualifies. *Id.* at 1140.

In sum, the Seventh Circuit has found a structural defect in § 2255 in three instances, each limited to a narrowly identified specific type of claim.

### C.  Mr. Purkey's Claims Do Not Fit within Any of the Instances Where the Seventh Circuit Has Found the Savings Clause to Apply

Mr. Purkey's claims do not fall within the holdings of *Davenport*, *Garza*, or *Webster*.  Mr. Purkey's claims are all constitutional rather than statutory, so none of them meet *Davenport*'s first requirement.  *See Poe*, 834 F.3d at 773 (explaining that *Davenport* "preclude[s] use of § 2241 for a constitutional case").  The structural defect in § 2255 identified in *Davenport*—that § 2255(h) does not permit successive § 2255 motions "for new rules of *statutory* law made retroactive by the Supreme Court," *id.*—therefore does not apply to any of his claims.

Mr. Purkey's claims do not fit within *Garza*'s narrow holding.  Unlike the petitioner's claims in *Garza*—which were based on the decision of an international tribunal and could not possibly have been raised in his initial § 2255 motion—Mr. Purkey's claims are common constitutional claims that can be raised in a § 2255 motion and thus do not implicate the structural concern identified in *Garza*.  Notably, the Seventh Circuit has recognized that *Garza* involved "'very unusual facts' . . . [and thus] its applicability beyond those facts is limited."  *Kramer v. Olson*, 347 F.3d 214, 218 n.1 (7th Cir. 2003) (quoting *Garza*, 253 F.3d at 921).

Last, Mr. Purkey's claims do not fall within *Webster*'s narrow holding.  Among other limitations, *Webster* only applies to claims that an individual is

"categorically ineligible for the death penalty," such as claims under *Atkins* and *Roper*. *Webster*, 784 F.3d at 1138-40; *see id.* at 1140 n.9 ("Because the Supreme Court has declared only two types of persons (minors and the intellectually disabled) categorically ineligible for a particular type of punishment, our ruling is as a matter of law limited to that set of people—those who assert that they fell into one of these categories at the time of the offense.").[2] Only one of Mr. Purkey's claims meets this requirement—his claim that *Atkins* should be extended to preclude execution of those who are mentally ill. Dkt. 23 at 199. But Mr. Purkey does not present any argument that this claim meets the Savings Clause, let alone a specific argument that it meets the requirements of *Webster* by, for example, showing that the claim relies on newly discovered evidence that existed at the time of the original proceeding. *See* Dkt. 23; Dkt. 58. Accordingly, Mr.

---

[2] For the first time in his reply, Mr. Purkey presents a cursory argument for why the Savings Clause is met for Claim 4 (that the jury instructions led the jury to believe that they could not consider certain mitigating evidence) and Claim 6 (the death penalty violates the Eighth Amendment). *See* Dkt. 58 at 67-69. He argues that Claim 4 falls within *Webster* because he relies on new evidence—namely, juror affidavits that purportedly show that jurors misunderstood the jury instructions. *Id.* at 66-67. But, as explained, this claim does not meet *Webster*'s third limitation.

As to Claim 6, he argues that this claim relies on new law—the Supreme Court's decision in *Hurst v. Florida*, 136 S. Ct. 616 (2016)—and thus his claim falls within *Garza* and *Webster*. Dkt. 58 at 68-69. *Webster* is of no assistance for this claim, as it does not rely on new evidence. *Poe*, 834 F.3d at 774 ("[T]here is nothing in *Webster* to suggest that its holding applies outside the context of new evidence."). *Garza* is also of no assistance, as nothing in it suggests that simply relying on a new legal precedent can meet the Savings Clause. If it did, *Garza* would not be described by the Seventh Circuit as having only "limited" applicability beyond its "very unusual facts.'" *Kramer*, 347 F.3d at 218 (quoting *Garza*, 253 F.3d at 921).

Purkey's claims cannot proceed through the Savings Clause via the structural defect in § 2255 identified in *Webster*.

Recognizing that his claims do not fall within the specific holdings of *Davenport*, *Garza*, or *Webster*, dkt. 58 at 7-8, Mr. Purkey argues that he can nonetheless meet the general Savings Clause test set forth in these cases. *Id.* at 7-9. In other words, Mr. Purkey asks this Court to extend the Seventh Circuit's Savings Clause precedents to new types of claims. The Court now turns to these arguments.

### D. The *Martinez–Trevino* Doctrine Does Not Apply to Mr. Purkey's Case

Mr. Purkey's only fully developed Savings Clause argument is for his ineffective assistance of trial counsel claims (Claims 1, 2, and 8).[3] *See* Dkt. 23 at 11-19; Dkt. 58 at 6-19. Mr. Purkey argues that his ineffective assistance claims meet the Savings Clause because he "has not had a meaningful opportunity to present" them to any Court. Dkt. 23 at 15.

There is no dispute that Mr. Purkey could not have raised these ineffective assistance claims on direct appeal and that he cannot raise them now in a second or successive § 2255 motion. Dkt. 23 at 12, 15; Dkt. 49 at 36. Mr. Purkey could not have raised his ineffective assistance claims on direct appeal because, except in rare circumstances, such claims "should be pursued in a collateral proceeding under 28 U.S.C. § 2255." *United States v. Moody*, 770 F.3d

---

[3] Mr. Purkey does not advance any argument for why the Savings Clause is met for Claims 5 and 7, and the cursory arguments for why his other claims meet the Savings Clause are addressed in Section III.C above.

577, 582 (7th Cir. 2014); *see United States v. Bryant*, 754 F.3d 443, 444 (7th Cir. 2014) ("A claim of ineffective assistance need not, and usually as a matter of prudence should not, be raised in a direct appeal, where evidence bearing on the claim cannot be presented and the claim is therefore likely to fail even if meritorious."). He cannot raise them now in a second or successive § 2255 motion because his claims do not meet the criteria in § 2255(h).

That leaves the failure to raise the claims in his initial § 2255 proceeding. Mr. Purkey maintains that he did not raise them because § 2255 counsel was ineffective.[4] Dkt. 23 at 13-18. Mr. Purkey argues that he may raise these claims now in this § 2241 action based on *Martinez v. Ryan*, 566 U.S. 1 (2012), *Trevino v. Thaler*, 569 U.S. 413 (2013), and *Ramirez v. United States*, 799 F.3d 845, 853 (7th Cir. 2015). Dkt. 23 at 16-17. The United States argues that neither the *Martinez–Trevino* doctrine nor *Ramirez* relate to the Savings Clause analysis, and that this Court should not extend the holdings of those cases to the entirely different legal question presented here. Dkt. 49 at 42-47.

1. The *Martinez–Trevino* Doctrine

The Court begins with the *Martinez–Trevino* doctrine. Both *Martinez* and *Trevino* involved state prisoners whose ineffective assistance of trial counsel claims were deemed procedurally defaulted by a federal court because the claims were not properly raised in state court.

---

[4] Because Mr. Purkey's claims must be rejected for other reasons, the Court does not address whether § 2255 counsel provided ineffective assistance by not adequately investigating and presenting Mr. Purkey's ineffective assistance of trial counsel claims.

In *Martinez*, appointed postconviction counsel failed to raise an ineffective assistance claim in an Arizona collateral proceeding. Martinez's postconviction relief case was dismissed. About a year and half later, Martinez obtained new counsel and filed new ineffective assistance of counsel claims in a second Arizona collateral proceeding. The petition was dismissed because Martinez had not raised these claims in his first collateral proceeding. After exhausting all postconviction procedures available under Arizona law, Martinez sought habeas relief in federal court.

The District Court denied relief on the basis that Martinez had procedurally defaulted his ineffective assistance claims by not properly raising them in state court. After the Ninth Circuit affirmed, the Supreme Court granted certiorari to answer the "precise question" of "whether ineffective assistance in an initial-review collateral proceeding on a claim of ineffective assistance at trial may provide cause for a procedural default in a federal habeas proceeding." *Martinez*, 566 U.S. at 9. The Supreme Court held that if state law requires state prisoners to raise ineffective assistance of trial counsel claims "in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel *or counsel in that proceeding was ineffective*." 566 U.S. at 17 (emphasis added).

In *Trevino*, the Court considered "whether, as a systematic matter, Texas affords meaningful review of a claim of ineffective assistance of trial counsel." *Trevino*, at 425. Concluding it did not, the Court extended the holding of

*Martinez* to jurisdictions like Texas where, although one can technically raise ineffective assistance of trial counsel claims on direct review, the "structure and design" of the system make that "virtually impossible." 569 U.S. at 416.

2. The Extension of the *Martinez–Trevino* Doctrine in the Seventh Circuit

In *Ramirez*, the Seventh Circuit addressed, to a limited extent, whether the *Martinez–Trevino* doctrine applies in the context of a federal § 2255 proceeding. The petitioner was a federal prisoner who failed to timely appeal the denial of his § 2255 motion because § 2255 counsel abandoned him. 799 F.3d at 847. Consequently, he was not able to obtain appellate review of his § 2255 proceeding. *Id.* at 849. The petitioner then "moved under Federal Rule of Civil Procedure 60(b)(6) for relief from the judgment," arguing "that postconviction counsel was ineffective for causing him to miss the appeal deadline." *Id.* at 848. The District Court denied the motion, believing that "there is no right to counsel on collateral review." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722 (1991)).

The Seventh Circuit resolved two issues. It first found that the petitioner was not "trying to present a new reason why he should be relieved of either his conviction or sentence" but instead was "trying to reopen his existing section 2255 proceeding and overcome a procedural barrier to its adjudication." *Id.* at 850. Under these circumstances, the Seventh Circuit concluded that the petitioner's Rule 60(b)(6) motion was permitted and was "not a disguised second or successive motion under section 2255." *Id.*

The Seventh Circuit next concluded that the *Martinez–Trevino* doctrine applies to federal prisoners "who bring motions for postconviction relief under

section 2255." *Ramirez*, 799 F.3d at 852. Therefore, under Rule 60(b)(6), the petitioner could argue that § 2255 counsel's abandonment allowed him to file an otherwise untimely appeal. *Id.* at 854 ("We see no reason to distinguish between actions at the state level that result in procedural default and the consequent loss of a chance for federal review [as happened in *Martinez* and *Trevino*], and actions at the federal level that similarly lead to a procedural default that forfeits appellate review.").

3. Mr. Purkey's Claims Cannot Proceed Under *Martinez*, *Trevino*, or *Ramirez*

Mr. Purkey argues that under *Ramirez*, he may now raise claims of ineffective assistance of trial counsel that were not raised in his § 2255 action due to ineffective assistance of § 2255 counsel. Acknowledging that he cannot bring a second or successive § 2255 action, Mr. Purkey argues that he nonetheless has the right to judicial review of his § 2255 proceeding. Dkt. 23 at 15-18. More specifically, he argues that he must be able to present his claims in a § 2241 action and that *Ramirez* supports opening this avenue of review.

The Court disagrees. *Martinez*, *Trevino*, and *Ramirez* do not involve the Savings Clause and thus are not controlling. Moreover, nothing in *Ramirez* suggests that its holding regarding *Martinez–Trevino* applies outside of the § 2255 context. The Seventh Circuit framed the second legal question in *Ramirez* as whether *Martinez* and *Trevino* "apply to some or all federal prisoners who bring motions for postconviction relief *under section 2255*." 799 F.3d at 852 (emphasis added). But this says nothing about whether *Martinez–Trevino* has any role in demonstrating whether the Savings Clause is met and thus whether § 2241 is

available.  Further, applying *Martinez–Trevino* to the narrow circumstances of a Rule 60(b) motion in a § 2255 proceeding does not create a rule that federal prisoners must have an alternative way to raise ineffective assistance of postconviction counsel when § 2255 is closed.  *Ramirez* does not address these questions at all.  And unlike the petitioner in *Ramirez*, Mr. Purkey had appellate review of his § 2255 case.  Applying it here would therefore require a substantial extension of *Ramirez*, and the Seventh Circuit has rejected other opportunities to do so.  *Cf. Lombardo*, 860 F.3d at 559 (holding that *Ramirez* should not be extended to the equitable tolling context).

Moreover, *Ramirez* has been construed narrowly by the Seventh Circuit to the facts involving abandonment of counsel.  *See Lombardo v. United States*, 860 F.3d 547, 559 (7th Cir. 2017) ("[N]otwithstanding its discussion of *Martinez* and *Trevino* and its embracing of the principles underlying those cases, *Ramirez*'s holding is best construed as resting on [counsel] abandonment."); *see also Adams v. United States*, 911 F.3d 397, 404 n.2 (7th Cir. 2018) (citing *Ramirez* for the proposition that "[a]bandonment by counsel" can qualify as a procedural defect that can be raised in a Rule 60(b) motion following the denial of § 2255 relief).

For these reasons, the Court rejects Mr. Purkey's argument that ineffective assistance of trial counsel claims that rely on *Martinez–Trevino* meet the Savings Clause.[5]  Mr. Purkey does not cite any federal court that has accepted this

---

[5] Mr. Purkey argues, in reply, that the *Martinez–Trevino* doctrine permits his fraud-on-the-Court claim (Claim 3) to proceed in this action.  Dkt. 58 at 57-58.

argument, and the federal courts that have considered this argument have rejected it. *See, e.g.*, *United States v. Sheppard*, 742 F. App'x 599 (3d Cir. 2018) (rejecting the petitioner's argument that *Ramirez* shows he meets the Savings Clause because he can raise the *Martinez–Trevino* issue in a Rule 60(b) motion in the underlying § 2255; "Section 2255 together with Rule 60(b) thus plainly is not inadequate or ineffective to test the legality of [the petitioner's] conviction and sentence such that he may resort to a § 2241 habeas corpus petition."); *Rojas v. Unknown Party*, 2017 WL 4286186, *6 (D. Ariz. May 16, 2017) ("*Martinez* and *Trevino* do not impact the [Savings Clause] analysis or otherwise apply to § 2241 petitions. Simply stated, *Martinez* and *Trevino* were based on the narrow ground of procedural default in the context of a § 2254 petition. The reasoning of these cases has never been extended or applied by any court to a § 2241 petition."); *see also Dinwiddie v. United States*, No. 2:18-cv-00149-JPH-MJD, Dkt. 25 (S.D. Ind. July 25, 2019); *Jackman v. Shartle*, 535 F. App'x 87, 89 n.5 (3d Cir. 2013).

The Court concludes that neither *Ramirez* nor any other precedent requires it to grant Mr. Purkey the relief he seeks.

### E. There is No Structural Problem with § 2255 When Applied to Mr. Purkey's Case

To the extent that *Ramirez* may authorize, without requiring, the Court to extend *Ramirez*'s holding to the Savings Clause context, the Court declines to do so. There is no structural problem with § 2255 when applied to the facts of Mr.

---

For the same reasons it does not permit his ineffective assistance claims to proceed, the Court rejects this contention.

Purkey's case. While Mr. Purkey did not succeed with his § 2255 motion, a structural problem requires "something more than a lack of success with a section 2255 motion." *Webster*, 784 F.3d at 1136. It must "foreclose[] even one round of effective collateral review, unrelated to the petitioner's own mistakes." *Poe v. LaRiva*, 834 F.3d 770, 773 (7th Cir. 2016) (citation and quotation omitted). That's not the case here.

In his § 2255 action, Mr. Purkey made 17 allegations of ineffective assistance against his trial counsel. Those claims were heard and adjudicated by the District Court, and the denial of them was affirmed by the Eighth Circuit. The record demonstrates that Mr. Purkey had "'a *reasonable* opportunity [in a prior § 2255 proceeding] to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence.'" *Chazen*, 938 F.3d at 856 (quoting *Davenport*, 147 F.3d at 609) (emphasis added); *see Davenport*, 147 F.3d at 609 ("Nothing in 2255 made the remedy provided by that section inadequate to enable Davenport to test the legality of his imprisonment. He had an unobstructed procedural shot at getting his sentence vacated."). A reasonable opportunity does not include the opportunity to years later second-guess the selection of the claims that were asserted in the § 2255 action, pick new or "better" claims, and have those claims subject to judicial review in another judicial district. Applied to the facts of Mr. Purkey's case, § 2255 is not inadequate or ineffective.

Moreover, allowing Mr. Purkey's ineffective assistance claims to be brought in a § 2241 proceeding would be contrary to the statutory framework Congress

created for federal prisoners seeking postconviction relief. Congress amended § 2255 in 1996 as part of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Most relevant here, AEDPA limits federal prisoners to one § 2255 motion unless they receive authorization from the Court of Appeals to file a second or successive § 2255 motion. 28 U.S.C. § 2255(h). This limitation was designed to curtail the problem of "repetitive filings" from federal prisoners challenging their convictions. *Garza*, 253 F.3d at 922.

Congress chose to "steer[] almost all [federal] prisoner challenges to their convictions and sentences toward § 2255." *Shepherd*, 911 F.3d at 862. It did so by requiring § 2255 motions be filed in the district of conviction, *Light*, 761 F.3d at 812, and limiting federal prisoners' access to § 2241 by way of the Savings Clause. *See Davenport*, 147 F.3d at 609 ("The purpose behind the enactment of section 2255 was to change the venue of postconviction proceedings brought by federal prisoners from the district of incarceration to the district in which the prisoner had been sentenced." (citing *United States v. Hayman*, 342 U.S. 205, 212-19 (1952)).

Section 2255 "not only relieved the district courts where the major federal prisons were located from a heavy load of petitions for collateral relief; it also enhanced the efficiency of the system by assigning these cases to the judges who were familiar with the records." *Webster*, 784 F.3d at 1145.

The Savings Clause "must be applied in light of [§ 2255's] history." *Taylor v. Gilkey*, 314 F.3d 832 (7th Cir. 2002); *see Unthank v. Jett*, 549 F.3d 534, 535 (7th Cir. 2008) (same). It cannot be interpreted so expansively that it

undermines "the careful structure Congress has created." *Garza*, 253 F.3d at 921; *see Chazen*, 938 F.3d at 865 (Barrett, J., concurring) (expressing "skeptic[ism]" of an argument that, if accepted, "risks recreating some of the problems that § 2255 was designed to fix").

In the limited instances where the Seventh Circuit has found the Savings Clause met, the Court crafted narrow holdings so as to not "creat[e] too large an exception to the exclusivity of section 2255." *Webster*, 784 F.3d at 1140; *see id.* at 1140 n.9. Here, that's not possible. The petitioners in *Davenport, Garza,* and *Webster* each presented a very specific "problem" based on a unique set of facts presented. In each case the relief granted was symmetrical, and thus inherently limited to a very small category of cases involving scenarios that could not or were not foreseen by Congress. In *Davenport*, for example, the petitioner's "problem" was that § 2255(h) did not permit a successive petition for new rules of statutory law. To fix this problem, the Seventh Circuit crafted a narrow exception with three specific requirements limiting when and how a petitioner could pass through this exception. *See Beason*, 926 F.3d at 935; *Davenport*, 147 F.3d at 610-12.

Here, there is no very specific "problem" based on a unique set of facts that could be remedied through a narrowly drawn rule that would apply to a very small category of cases. Mr. Purkey's "problem" is that after availing himself of the postconviction relief process created by Congress, including appellate review, he did not get the outcome that he wanted on his claims of ineffective assistance

of counsel.  But there is no "something more," *Webster*, 784 F.3d at 1136, so there is no structural problem with § 2255.

Unlike the limited types of claims that the Seventh Circuit has held to meet the Savings Clause in *Davenport* (statutory claims based on a retroactive change in the law), *Garza* (claims based on new decisions from international tribunals), and *Webster* (*Atkins* or *Roper* claims based on newly discovered evidence that existed at the time of the original proceedings and could not be discovered through reasonable diligence), Mr. Purkey asks the Court to allow ineffective assistance of trial counsel claims to proceed through the Savings Clause on the basis that § 2255 counsel was ineffective.  But unlike the relatively narrow categories of claims allowed to proceed in *Davenport*, *Garza*, and *Webster*, ineffective assistance of trial claims are ubiquitous.  *See Burt v. Titlow*, 571 U.S. 12, 19 (2013) (emphasizing that ineffective assistance of counsel claims are "common" and have been "adjudicated in countless criminal cases for nearly 30 years").  To allow such a frequently litigated claim to be raised in a § 2241 petition would dismantle the very structure of § 2255.  "If error in the resolution of a collateral attack were enough to show that § 2255 is inadequate or ineffective, many of the amendments made in 1996 would be set at naught." *Taylor*, 314 F.3d at 836.

## IV.

For the foregoing reasons, the claims Mr. Purkey presents in his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 are barred by the Savings Clause, 28 U.S.C. § 2255(e).  His ineffective assistance of trial counsel

claims (Claims 1, 2, and 8) are rejected for the reasons set forth in Sections III.D and III.E. His remaining five claims fail to fall within any of the Seventh Circuit's Savings Clause precedents, and Mr. Purkey does not advance any basis for extending those precedents to these claims. Accordingly, his petition is denied with prejudice. *See Prevatte v. Merlak*, 865 F.3d 894, 901 (7th Cir. 2017) (explaining that dismissals pursuant to § 2255(e) are with prejudice).

Because the Court has resolved Mr. Purkey's claims, his motion to stay his execution pending resolution of his claims, dkt. [4], is **denied** as moot. Final Judgment consistent with this Order shall issue.

**SO ORDERED.**

Date: 11/20/2019

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Brian Patrick Casey
U.S. ATTORNEY'S OFFICE
brian.casey@usdoj.gov

Michelle M. Law
FEDERAL DEFENDER -- WESTERN DISTRICT OF MISSOURI
michelle_law@fd.org

Kathleen D. Mahoney
UNITED STATES ATTORNEY'S OFFICE
kate.mahoney@usdoj.gov

Brian L. Reitz
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
brian.reitz@usdoj.gov

Jeffrey E. Valenti
UNITED STATES ATTORNEY'S OFFICE
jeff.valenti@usdoj.gov

Rebecca Ellen Woodman
REBECCA E. WOODMAN, ATTORNEY AT LAW, L.C.
rewlaw@outlook.com